WHITE HOUSE VIGIL FOR the ERA
COMMITTEE, et al.

v.

James G. WATT, Secretary, United
States Department of Interior, et
al., Appellants.

No. 83–1775.

United States Court of Appeals,
District of Columbia Circuit.

Aug. 18, 1983.

Before WALD and BORK, Circuit Judges, and OBERDORFER,* Judge, United States District Court for the District of Columbia.

ORDER

PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. On consideration of the foregoing, and for the reasons stated in a memorandum to be filed, it is

ORDERED, by the Court, that the District Court shall, on or before August 23, 1983, modify its order entered July 19, 1983, pending trial and decision on the merits, in the following respects:

(1) A limit shall be set as to the size, number, and spacing of signs leaned against the White House fence or ledge, or placed in a stationary position within three feet of the fence, at any one time to the extent reasonably necessary to permit surveillance of both sides of the signs by a combination of officers stationed inside and outside the White House fence;

(2) Any sign or placard placed on the White House sidewalk, leaned against the White House fence, or placed upon or leaned against the ledge, shall be attended at all times by being within three feet of the person responsible for controlling it;

(3) Any sign support or frame made of hollow metal tubing shall be permanently secured at both ends in a manner which will prevent the insertion of any object into the tubing or the ejection of any object from the tubing;

(4) The regulations in 36 C.F.R. §§ 50.-19(e)(10) and 50.7(h)(2) pertaining to the placement or storage of parcels, containers, packages, bundles or other property on the White House sidewalk may be enforced. Any such enforcement shall be without distinction between demonstrators and others, and without prejudice to consideration by the District Court on remand of this Order, or in the plenary trial, of a claim for an exception to these requirements for the benefit of any plaintiff claiming a right to have on

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

the White House sidewalk under the immediate physical control of that plaintiff a reasonable inventory of pamphlets, leaflets and similar writings for distribution there.

In all other respects, the order of the District Court entered on July 19, 1983, is affirmed. And it is

FURTHER ORDERED, by the Court, that the District Court shall afford the parties an expedited trial on the merits, with the understanding that neither this order nor the forthcoming memorandum precludes de novo consideration of all the issues of fact and law in a plenary trial. And it is

FURTHER ORDERED, by the Court, that the Clerk shall cause a copy of this order to be certified and delivered to the District Court forthwith. This shall constitute the mandate herein.

BORK, Circuit Judge, would allow 36 C.F.R. §§ 50.19(e)(10) and 50.7(h)(2) to be enforced as those regulations are now written, without the possibility of interim modification, pending the plenary trial.

MEMORANDUM

PER CURIAM:

Plaintiff-appellees are individuals and organizations that frequently demonstrate on the sidewalk in front of the White House. They brought suit for declaratory and injunctive relief against enforcement of amendments to 36 C.F.R. §§ 50.7 and 50.19 issued by the National Park Service.[1] They argued that these amendments, which restrict the size, location, and construction of signs used in demonstrations as well as the placement of packages and other personal property on the sidewalk, abridge their First Amendment rights. The district court granted a preliminary injunction forbidding the defendants from enforcing the amended regulations insofar as they restrict the width of signs, the length of signs held parallel to the White House fence, the use of sign supports made of hollow metal tubes, the leaning of signs against the White House fence, and the placement of "attended" parcels or other property on the sidewalk. The district court also enjoined provisions of the regulations that require demonstrators to maintain physical contact with their signs at all times.[2]

The defendants appeal, claiming that the trial judge erred in granting the preliminary injunction. Insofar as the injunction permits the placement of parcels and other personal property on the White House sidewalk longer than momentarily, we agree that the trial judge abused his discretion. But we cannot agree that he abused his discretion in enjoining portions of the regulations restricting signs. Instead, "[b]ecause of the peculiar sensitivity of one issue involved—the safety of the President," A Quaker Action Group v. Hickel, 421 F.2d 1111, 1113 (D.C.Cir.1969), we chose, in an order issued in advance of this memorandum, to modify the injunction in certain respects pending trial and decision on the merits.

I.

The regulations at issue affect two distinct categories of paraphernalia that the public may carry onto the White House sidewalk: signs, which are governed by 36 C.F.R. § 50.19(e)(9); and other articles of personal property, which are governed by 36 C.F.R. §§ 50.7(h)(2) and 50.19(e)(10). The sign regulation permits only signs made of cardboard, posterboard, or cloth that are no larger than three feet in width, twenty feet in length, and one-quarter inch in thickness, and that are supported by wooden poles having cross-sectional dimensions no greater than three-quarters of an inch by three-quarters of an inch. It also bans the placement of a stationary sign within three feet of the White House fence, the attachment of signs to the fence, and

---

1. The amended regulations have been published in the Federal Register. See 48 Fed.Reg. 28058–63 (June 17, 1983).

2. See White House Vigil for the ERA Committee v. Watt, Civil Action No. 83–1243, Memorandum Opinion and Order filed July 19, 1983.

the placement of any sign in the twenty-yard wide central portion of the sidewalk. Finally, it requires that signs be attended at all times by being in physical contact with a person. The regulations governing other articles of personal property prohibit the placement or storage of any parcel, container, package, bundle, or other property on the sidewalk except momentarily in the immediate presence of the owner.

After reviewing affidavits and hearing testimony from law enforcement officials, demonstrators, and security experts, the trial court concluded that certain provisions of the regulations impair the ability of demonstrators to express themselves, and that the government had not made an adequate showing that these provisions are essential to presidential security. Memorandum Opinion filed July 19, 1983, at 14. The trial court reached this conclusion by balancing the burden each restriction imposed on the ability of demonstrators to express themselves against the security interest addressed by the restriction. The restrictions on materials used to construct signs were upheld because they were necessary to minimize the risk that someone might use a sign to scale the White House fence and thus gain access to the grounds and the building. The district court enjoined restrictions on the width of signs and the length of signs held parallel to the fence because, in its view, defendants could maintain surveillance on both sides of such a sign by posting officers on both sides of the fence. Similarly, it enjoined restrictions on the placement of signs within three feet of the fence and the leaning of signs against the fence on the reasoning that such placement was unlikely to pose a security risk as long as the signs were "attended" by demonstrators. The trial court concluded that the requirement that the signs be attended was alone sufficient to prevent the use of the signs to hide explosives. The requirement that demonstrators maintain physical contact with their signs was enjoined as unnecessary in view of the requirement

that the signs be attended. The regulation's provision barring use of hollow metal sign supports was enjoined for the same reason: As long as a demonstrator must remain in attendance on his sign, he will not hide explosives in its support unless he is suicidal.

The court applied similar reasoning to enjoin some of the restrictions on packages and personal property. The regulations prevent the placement of parcels, bundles, packages, or other items of property on the sidewalk except momentarily in the immediate presence of the owner because of the possibility that such a parcel could conceal explosives. But the trial court reiterated that the "immediate presence" requirement would be sufficient to prevent such concealment by all but suicidal persons. The court therefore enjoined enforcement of the portion of the regulation that prohibited an attended parcel from being placed on the sidewalk more than momentarily. July 19 Memorandum Opinion at 17–18.

## II.

Our review of a district court's decision to grant a preliminary injunction is limited essentially to correction of an abuse of discretion. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–2568, 45 L.Ed.2d 648 (1975). A court abuses its discretion in granting a preliminary injunction when it rests its analysis on an erroneous premise or is clearly wrong in reaching its conclusions. *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C.Cir.1969).

Here, the trial court's order with respect to the regulations governing signs and placards neither proceeded from an erroneous premise nor was clearly wrong. Under both *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) and *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981),[3] the district court could

---

**3.** The *O'Brien* decision requires, *inter alia*, that the restriction imposed on First Amendment freedoms by time, place and manner regula-

tions be "no greater than is necessary" to promote a substantial governmental interest. *See also Heffron*, 452 U.S. at 654, 101 S.Ct. at 2567;

have reasonably concluded that the plaintiffs had a substantial likelihood of success in their challenge of the regulations. Similarly, the district court could reasonably have concluded that the other three conditions necessary to the issuance of a preliminary injunction of the sign restrictions were satisfied.[4]

Yet where the security of the President is involved, our decisions have established that we may modify a preliminary injunction in extreme circumstances even when there has been no abuse of discretion below. *A Quaker Action Group v. Hickel, supra,* 421 F.2d at 1118–19. The balance that must be struck between First Amendment rights and other public interests is especially delicate when one of those interests is the safety of the President. Here, as in *Quaker Action,* we must balance the concerns of defendants responsible for the safety of the President and the established right of citizens to petition for a redress of grievances at a site uniquely adapted to their needs. Accordingly, we modify the district court's preliminary injunction in three respects.

■ First, we have directed the trial court to set a limit as to the size, number, and spacing of signs leaned against the White House fence or ledge, or placed in a stationary position within three feet of the fence, at any one time to the extent reasonably necessary to permit surveillance of both sides of the signs by a combination of officers stationed inside and outside the White House fence. We agree with the district court that any restriction on the size or placement of signs should assume that defendants will be observing the sidewalk from inside as well as outside the fence. But the record and common sense indicate a genuine risk that in very large demonstrations involving numerous large signs, a wide portion of the sidewalk could be screened from the view of both Secret Service officers inside the fence and police officers patrolling the sidewalk outside the

fence so as to impair their ability to counter activities threatening to the President. The district court should fashion a rule that addresses this risk.

■ Second, we have directed the trial court to impose an objective standard governing when signs placed on the sidewalk or leaned against the fence are "attended." Because this term as used in the district court's order of July 19 is somewhat vague, there may be doubt and uncertainty among both security personnel and demonstrators as to when a sign is "attended." To reduce this uncertainty and the possibility of litigation about it, an "attended" sign or placard should be defined objectively as one within three feet of the person responsible for controlling it.

■ Finally, we have directed the trial court to require that sign supports and frames made of hollow metal tubing be permanently secured at both ends in a manner which will prevent the insertion of any object into the tubing or the ejection of any object from the tubing. Again, the record and common sense show the capability of hollow metal tubes to house and to propel lethal devices and the risk to the President which is thereby created. The plaintiffs' understandable objections to scrapping the tubular sign supports and frames that they are using is reasonably accommodated by the requirement that the tubing be permanently secured.

### III.

The regulation prohibiting the placement of any parcel on the sidewalk except momentarily was found by the district court to be one of "the most burdensome restrictions in the regulations." Memorandum Opinion filed July 19, 1983, at 15. The court explained that this restriction, coupled with

---

*Community for Creative Non-Violence v. Watt,* 703 F.2d 586, 597 n. 28 (D.C.Cir.1983) (plurality opinion).

4. *See Washington Metropolitan Area Transit Authority v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977).

the rule that prohibits demonstrators from resting on the ledge with their signs,[5]

> would make it extremely difficult for elderly and infirm people, or for parents with young children, to demonstrate at all; and they would create logistical problems for any demonstrators who came to Washington from a distance or who plan to demonstrate on the White House sidewalk for more than a short period of time. Moreover, these restrictions would in effect make it impossible for a demonstrator to conduct a round-the-clock vigil on the White House sidewalk.

*Id.* In addition, the court stated that if demonstrators were assumed not to be suicidal, the requirement that parcels be attended would be sufficient to deter their use to hide explosives. In the trial court's view, the additional provision that parcels could be placed on the ground only momentarily was unnecessary. It therefore enjoined the regulation insofar as it limited the amount of time that an attended parcel could be placed on the ground as unduly burdensome on First Amendment interests and ill-fitted to achieve the government's goal.

■ Because the relationship of parcels deposited on the sidewalk to First Amendment rights is less direct than the carrying of signs and because the parcel regulations apply across-the-board to demonstrators and nondemonstrators alike, we are persuaded that the district court abused its discretion in enjoining the parcel regulation, pending trial and decision on the merits. In our view, the district court should have given greater weight to the defendants' concerns about the potential for danger in parcels on the White House sidewalk and the difficulty in policing them so as to keep track of the attended and the unattended. However, we recognize the possibility that a particular plaintiff may require access to pamphlet-like materials in order effectively to exercise First Amendment rights, pending a decision on the merits.

Our order therefore left the door open for such a plaintiff to apply to the district court for exemption of such materials from the parcel regulation. In considering such an application, the district court may take into account, among other things, whether the parcels in question are reasonably inspectable, or whether the applicant for exemption has a nearby place for storage to which he can repair for resupply.

Appellees asserted in oral argument that the government has failed to enforce the parcel regulation against nondemonstrators and questioned whether it had been adopted, using the pretense of presidential security, to harass White House demonstrators. In response, appellants have assured this court that presidential safety is their motivating concern and that the regulation will be enforced against demonstrators and nondemonstrators alike. Our order reflects the representations of the government that enforcement will be even-handed in the future and directs that the regulation be enforced in that way.

### IV.

With our modifications, we believe the district court's injunction should maintain the proper balance between First Amendment concerns and the security of the President, pending trial and decision on the merits. Trial should be expedited as much as is reasonably possible. Nothing stated here or in the court's order of August 18, 1983, precludes the district court from *de novo* consideration of all issues of fact and law in that plenary trial.

BORK, Circuit Judge, would allow 36 C.F.R. §§ 50.19(e)(10) and 50.7(h)(2) to be enforced as those regulations are now written, without the possibility of interim modification, pending the plenary trial.

---

**5.** Our order leaves in place the district court injunction against the provision of the regulation which proscribed the resting of signs within three feet of the fence, and which by implication proscribed demonstrators with signs, but not others, from resting on the ledge.