189 F.3d 999 (9th Cir. 1999)
 STEPHEN BOGOVICH; CHARLES W. THOMPSON, Plaintiffs-Appellants,
v.
JOSEPH SANDOVAL, Secretary of Youth and Corrections Agency; JAMES H. GOMEZ, Director of the Department of Corrections; JOHN W. GILLIS, Commissioner of the Board of Prison Terms, Defendants-Appellees.
 No. 96-16528
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted June 15, 1999--San Francisco, California
Decided August 30, 1999
 
 Thomas P. Brown, Heller Ehrman White & McAuliffe, San Francisco, California, for the plaintiffs-appellants.
 Joan W. Cavanagh, Deputy Attorney General, Sacramento, California, for the defendants-appellees.
 Caroline N. Mitchell, Pillsbury Madison & Sutro, San Francisco, California, and Prison Law Office, San Quentin, California, for the amicus curiae.
 Appeal from the United States District Court for the Eastern District of California; Garland E. Burrell, District Judge, Presiding. D.C. No. CV-96-00297-GEB.
 Before: Thomas G. Nelson, Michael Daly Hawkins, and Susan P. Graber, Circuit Judges.
 T.G. NELSON, Circuit Judge:
 
 
 1
 This court must determine whether the claim asserted in this case--that the Board of Prison Terms' ("Board") consideration of prisoners' past substance abuse history as a part of its parole decisions violates the Americans with Disabilities Act ("ADA")--must be brought as a habeas corpus petition. We conclude that the claim does not necessarily challenge the fact or duration of appellants' confinement and that, as a result, they are not required to bring a habeas petition to assert their claims. We therefore reverse the district court's stay order, which required appellants to exhaust state habeas remedies.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 Stephen Bogovich and Charles Thompson are state prisoners who are serving terms of fifteen years to life for second-degree murder. Both received treatment for substance abuse while in prison and have been drug-free since 1984 and 1990, respectively. Both became statutorily eligible for parole in 1993 and both assert that they have been denied a parole release date primarily due to their history of substance abuse. Appellants filed this action in federal court against the Board, asserting that their policy of considering a prisoner's substance abuse history when making parole decisions violates Title II of the ADA. Appellants' complaint sought prospective injunctive relief only. Specifically, the remedy sought was a prohibition against the Board "[c]ontinuing to deny plaintiffs a parole release date primarily because of their substance abuse disabilities."
 
 
 3
 A magistrate judge determined that the complaint alleged that appellants were "improperly denied parole, " that their claims "may affect their release from prison, " and that their "sole federal remedy is a writ of habeas corpus. " Characterizing their claim as an action pursuant to 42 U.S.C.S 1983, the magistrate judge then ordered appellants' claim to be stayed pending the exhaustion of state habeas remedies. The district court, stating that the prisoners had filed a civil rights action seeking relief under S 1983, affirmed the magistrate judge's order. Appellants timely appealed.
 
 II. STANDARD OF REVIEW
 
 4
 A district court's decision to stay civil proceedings to allow for exhaustion of state habeas remedies is reviewed for abuse of discretion. See Marchetti v. Bitterolf, 968 F.2d 963, 966 (9th Cir. 1992). "A district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." United States v. Plainbull, 957 F.2d 724, 725 (9th Cir. 1992). Whether a petitioner's sole federal remedy is a writ of habeas corpus is a question of law, which we review de novo. See General Dynamics Corp. v. United States, 139 F.3d 1280, 1282 (9th Cir. 1998).
 
 III. ANALYSIS
 A. Appellants' Claim
 
 5
 As an initial matter, it appears that the magistrate judge and the district court misconstrued appellants' complaint as a S 1983 claim. It is clear that the complaint is challenging the Board's action only as a statutory violation of the ADA. The well-drafted complaint asserts only, and details facts related to, potential ADA violations, and it appears to have done so as an attempt to create a novel challenge to the Board's procedures. Although courts must construe pro se complaints liberally, see Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992), courts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action. " `[T]he party who brings a suit is master to decide what law he will rely upon.' " Caterpillar Inc. v. Williams, 482 U.S. 386, 392 n.7 (1987) (quoting The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913)).It seems only appropriate to review appellants' complaint as they plead it--a complaint seeking relief for alleged violations of the ADA.
 
 
 6
 B. Relationship between Habeas Corpus and ADA Claims
 
 
 7
 "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). When a prisoner chal lenges "the fact or duration of his confinement[ ] based . . . upon the alleged unconstitutionality of state administrative action[,] [s]uch a challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction." Id. at 489.
 
 
 8
 Prisoners may not attempt to evade habeas procedural requirements, such as exhaustion of state remedies, by characterizing their claims as seeking some other type of relief. See id. at 489-90. Thus, in Preiser, the Supreme Court held that a prisoner could not bring a S 1983 civil rights claim in federal court when the prisoner was seeking injunctive relief to compel the restoration of good-conduct-time credits. See id. at 487. Because the requested relief necessarily would have resulted in shortening the duration of the prisoner's confinement, the Supreme Court held that habeas corpus was the prisoner's "sole federal remedy." See id. at 500. Since Preiser, it has been firmly established that a prisoner must bring a habeas petition if the nature of the claim is such that it would necessarily imply the invalidity of the prisoner's conviction or continuing confinement. See Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997) (citing Balisok , 520 U.S. at 644).
 
 
 9
 The claim here challenges the Board's activities under the ADA. Title II of the ADA broadly prohibits discrimination by public entities against individuals with disabilities: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. S 12132. The prohibitions of the ADA apply to state prisons. See Pennsylvania Dep't of Corrections v. Yeskey, 118 S. Ct. 1952, 1954 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997). There is no exhaustion requirement for claims brought under Title II of the ADA. See Cable v. Department of Developmental Servs., 973 F. Supp. 937, 940 (C.D. Cal. 1997) ("Courts have consistently held that there is no exhaustion requirement under Title II of the ADA.").
 
 
 10
 Ordinarily, state prisoners' ADA claims relate to issues such as the denial of access to prison facilities, denial of satisfactory medical attention, denial of sign language interpretation services, or denial of the opportunity to participate in educational, vocational, or rehabilitation programs. See e.g., Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 591 (4th Cir. 1997); Armstrong, 124 F.3d at 1021; Yeskey v. Pennsylvania Dep't of Corrections, 118 F.3d 168, 169 (3d Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 451-52 (9th Cir. 1996). These cases relate to the conditions of confinement instead of the validity or duration of confinement. The issue presented by this case--the Board's consideration of past substance abuse as a part of its decision in setting a parole release date--is of a slightly different character than the prisoner ADA cases that this court has previously addressed. We now must decide whether appellants are using the ADA to challenge the fact or duration of their confinement.
 
 
 11
 There is no reason to believe that ADA claims should be treated any differently than S 1983 claims when examining whether a prisoner's case should have been brought under habeas corpus. Regardless of the type of claim asserted, the traditional purposes of habeas corpus must be preserved."It would wholly frustrate explicit congressional intent to hold that [prisoners] . . . could evade [the exhaustion requirements of habeas corpus] by the simple expedient of putting a different label on their pleadings." Preiser, 411 U.S. at 489-90. "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of [the ADA]. " Id. at 490. Thus, when an ADA claim raises the specter of a challenge to the validity or duration of confinement, the court must determine whether the petitioner's sole federal remedy lies in the writ of habeas corpus.
 
 C. Appellants' Claim
 
 12
 Without addressing or resolving the merits of their claim, the issue to which we turn is whether appellants' ADA claim for injunctive relief is a claim that, if successful, necessarily would imply the invalidity of their continuing confinement. We conclude that it does not.
 
 
 13
 The facts of this case fall somewhere between our precedents in Butterfield and Neal v. Shimoda , 131 F.3d 818 (9th Cir. 1997). In Butterfield, the appellant brought a S 1983 damages claim alleging that his due process rights were violated by a parole board's reliance on false information contained in his prison file to find him ineligible for parole. See Butterfield, 120 F.3d at 1024. The panel held that a "challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement." Id.
 
 
 14
 Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether the denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits. Appellant's civil claim for damages amounts to a collateral attack on his denial of parole and subsequent incarceration. [Supreme Court precedent] does not permit this.
 
 
 15
 Id.
 
 
 16
 A few months later, this court distinguished Butterfield. In Neal, the appellants filed a S 1983 action alleging that Hawaii's sex offender treatment program, which labeled them as sex offenders and required treatment as a precondition for parole eligibility, violated their constitutional rights. See Neal, 131 F.3d at 821. The court held that success on their claims would not necessarily imply the invalidity of their confinement. Rather, the court noted:
 
 
 17
 The only benefit that a victory in this case would provide . . . is a ticket to get in the door of the parole board, thus only making them eligible for parole consideration according to the terms of their sentences. If [they] win, it will in no way guarantee parole or necessarily shorten their prison sentences by a single day. The parole board will still have the authority to deny the inmates' request for parole on the basis of any of the grounds presently available to it in evaluating such a request. A victory in this case would not alter the calculus for the review of parole requests in any way.
 
 
 18
 Id. at 824 (footnote omitted) (emphasis in original). Thus, the court concluded that the inmates' claims were properly brought under S 1983, because they did not imply the invalidity of their continuing confinement. See id.
 
 
 19
 Here, appellants challenge one of the numerous factors that the Board considers in determining whether to set a parole date. Appellants do not allege that they have been improperly denied parole, and they do not seek to upset any previous decisions denying parole. Nor would appellants necessarily be entitled to parole or to shorter prison terms if they were successful on the merits of their ADA claim. Rather, appellants contend that, in the future, the Board should not be allowed to discriminate against disabled inmates in itsparole decision-making process. If appellants are successful on their ADA claim, the Board might be required, at most, to limit its consideration of substance abuse as a parole factor or make other reasonable accommodations, if and when appellants or similarly situated persons come before the Board for parole consideration.
 
 
 20
 Although appellants' attack is directed at the Board's decision-making process, success on their claim will not in any way "guarantee parole or necessarily shorten their prison sentences" because the Board will still have the authority to deny their request for parole "on the basis of any of the grounds presently available to it in evaluating such a request." Neal, 131 F.3d at 1024. Not all challenges to a parole board's policy implicate the invalidity of continued confinement; appellants' ADA claim does not raise such an implication here.
 
 IV. CONCLUSION
 
 21
 Our habeas corpus precedent, arising from S 1983 claims, applies with equal force to claims brought by prisoners under the ADA. If an ADA claim challenges the validity or duration of confinement, the prisoner's sole federal remedy is the writ of habeas corpus. In this case, because appellants' ADA claim does not necessarily imply the invalidity of their continuing confinement, appellants were not required to bring a habeas corpus petition. The district court erred when it stayed appellants' claim pending the exhaustion of state habeas remedies.[1] We therefore
 
 
 22
 REVERSE and REMAND for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 We express no view on the merits of the appellants' ADA claim.