**NATIONAL LABOR RELATIONS BOARD, Respondent,**

v.

**HARRIS TEETER SUPERMARKETS, Movant.**

No. 79-1792.

United States Court of Appeals, District of Columbia Circuit.

Argued March 17, 2000.

Decided June 13, 2000.

D. Christopher Lauderdale argued the cause for Movant. With him on the briefs was J. Howard Daniel.

Stanley R. Zirkin, Deputy Assistant General Counsel, National Labor Relations Board, argued the cause for respondent. With him on the brief were Leonard R. Page, General Counsel, Linda Sher, Associate General Counsel, and Gary Shinners, Assistant General Counsel. Aileen A. Armstrong, Deputy Associate General Counsel, entered an appearance.

Before: SENTELLE, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This matter comes before us on Harris Teeter Supermarkets' motion to vacate a consent decree we approved in 1986 pertaining to conduct by the company which gave rise to allegations of labor law violations. In seeking this relief, the company fails to demonstrate any harm resulting from the decree's continuing effect distinct from the harms inherent in any injunctive restraint, fails to establish the imposition of unforeseen obstacles which make its compliance with the decree unworkable, and fails to prove the existence of an extended "clean" compliance record. Therefore, we deny the company's motion.

## I. Background

Harris Teeter is a retail grocery chain currently operating 150 stores and related facilities. In the 1970s, the United Food & Commercial Workers Union launched an organizing campaign at Harris Teeter's Charlotte, North Carolina, warehouse facility. In 1976, the union was certified as the collective bargaining representative of a large bargaining unit of warehouse employees.

The warehouse organizing campaign resulted in various unfair labor practice charges being lodged against the company. During the campaign, the company promised an employee future raises if he would refrain from supporting union organizing activity, granted employees a raise to discourage union activity, engaged in coercive interrogation and unlawful solicitation of employees, interrogated employees regarding their participation in National Labor Relations Board ("NLRB") proceedings, discharged three leading union adherents, and discharged an employee for appearing as a witness for the NLRB's general counsel. In 1977, the NLRB found that Harris Teeter's conduct violated the National Labor Relations Act ("NLRA" or "Act"). *See Harris–Teeter Super Markets, Inc.,* 231 N.L.R.B. 1058, 1068–69 (1977).

Two years after the first NLRB order, the Board found that the company had committed additional violations of the Act at the Charlotte warehouse during 1976 and 1977. Specifically, the company unlawfully interrogated employees about the union election, created the impression that the employees' union activities were under surveillance, threatened employees with discharge for engaging in union activities, and continued to intimidate and threaten employees with job-related retaliation after the election of the union. *See Harris–Teeter Super Markets, Inc.,* 242 N.L.R.B. 132, 167 (1979). In 1981, this court entered a judgment enforcing the NLRB's 1979 order. *See Local 525, Meat, Food and Allied Workers Union v. NLRB,* 644 F.2d 39 (D.C.Cir.1981) (table).

In 1984, the NLRB sought to have Harris Teeter held in contempt for violating the court's 1981 enforcement order. The Board alleged that the company had made threats to relocate the Charlotte warehouse if employees would not disavow the union, supported a card-signing campaign to oust the union, disparately enforced rules regarding access to company facilities, restricted the break time activity of union supporters, and stated that it did not hire blacks or other minorities because they would favor the union. In 1986, this court approved a stipulation providing for the entry of a consent order, or consent decree, against the company. The consent decree required Harris Teeter to (1) fully comply with the court's 1981 judgment, and not engage in, induce, encourage, permit, or condone any violation of the judgment; (2) refrain from engaging in specified anti-union conduct and from otherwise interfering with, restraining, or coercing the employees' exercise of their rights under the NLRA; (3) post a remedial notice for 60 days; (4) mail copies of the notice

and the consent decree to all current and former warehouse employees; (5) file a sworn statement listing the steps taken to comply with the court's directives; (6) pay the NLRB's costs of $8,000; and (7) require supervisor Mike Weaver to read the consent decree and signify in writing that he had read and understood the consent decree and the court's 1981 judgment and that he would comply with the 1981 judgment. The consent decree also subjected Harris Teeter to a prospective non-compliance fine of $10,000 for each future violation of the decree and the 1981 judgment. The decree applied to all of Harris Teeter's facilities.

Harris Teeter promptly complied with requirements (3) through (7) of the consent decree. With regard to the remaining requirements, Harris Teeter has never been found in contempt of the decree. However, the NLRB has issued decisions finding that Harris Teeter has engaged in post–1986 unfair labor practices. Specifically, in 1989, the Board found that the company had violated the NLRA when, at the Charlotte warehouse, it unilaterally promulgated a sexual harassment policy, unilaterally changed a break policy and issued an unlawful warning pursuant to the changed policy, unilaterally implemented a change regarding a job progression policy, and bypassed the union and engaged in direct dealing with employees by asking them their opinions of a four-day work week. *See Harris–Teeter Super Markets, Inc.,* 293 N.L.R.B. 743, 747 (1989). In 1990, the Fourth Circuit enforced the NLRB's 1989 order. *See NLRB v. Harris–Teeter Supermarket,* 905 F.2d 1530 (4th Cir.1990) (table). Likewise, in 1992 and 1993, the NLRB found that the company had violated various provisions of the Act by prohibiting employees from receiving gifts from vendors based on an employee's union sympathies, issuing a series of warnings to employees because of their discussion of protected activity, and acting unilaterally on certain matters and directly dealing with employees. *See Harris–Teeter Super Markets, Inc.,* 307

N.L.R.B. 1075, 1088 (1992); *Harris–Teeter Super Markets, Inc.,* 310 N.L.R.B. 216, 217 (1993). All of the aforementioned misconduct occurred in 1990 or earlier.

In addition, several unfair labor practice charges filed against the company have been settled between 1986 and 1995. Most of the settlements resulted in the withdrawal of charges. The most recent settlement cited occurred in 1995 and involved an allegation of the unlawful implementation of a leave early policy.

Harris Teeter now seeks to have this court vacate the 1986 consent decree. The company contends that the consent decree should be vacated because it has "never been held in contempt of any provision of [the] order since its entry in 1986," "has not been found to have violated the NLRA in approximately ten years" while at the same time experiencing substantial growth as a company, has made significant changes in its management personnel since the decree's entry, has taken other various organizational measures to ensure compliance with the decree, and should be freed from the "stigma" of the decree. The NLRB opposes vacating the consent decree.

## II. Discussion

Rule 60(b)(5) of the Federal Rules of Civil Procedure provides the basis for this motion to vacate the consent decree. *See Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378–79, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (applying Rule 60(b) to modification of consent decrees); *United States v. Western Elec. Co.,* 46 F.3d 1198, 1203 n. 5 (D.C.Cir.1995) (associating *Rufo* analysis specifically with Rule 60(b)(5)). In part, the rule provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons . . . (5) the judgment has been satisfied, released, or discharged, . . . or it is no longer equitable

that the judgment should have prospective application. . . .

Fed.R.Civ.P. 60(b)(5). As we have previously stated, the "[m]odification [of a judgment] is an extraordinary remedy, as would be any device which allows a party . . . to escape commitments voluntarily made and solemnized by a court decree." *Twelve John Does v. District of Columbia,* 861 F.2d 295, 298 (D.C.Cir.1988). Therefore, we approach Harris Teeter's modification request with caution. Fortunately, Supreme Court precedent provides us with guidance.

■ In *Rufo,* the Suffolk County Sheriff moved to modify a consent decree which provided remedial relief for unconstitutional jail conditions. *See Rufo,* 502 U.S. at 374–75, 112 S.Ct. 748. The relief included the construction of a new jail containing single occupancy cells for pretrial detainees. *See id.* at 375, 112 S.Ct. 748. During a delay in construction, the inmate population increased considerably and rendered the original plans inadequate to handle the increase. *See id.* at 375–76, 112 S.Ct. 748. The sheriff moved to modify the decree to allow at least some double bunking but both the district court and First Circuit Court of Appeals refused to order the modification. *See id.* at 376–78, 112 S.Ct. 748. In vacating and remanding the case for reconsideration, the Supreme Court rejected the modification standard adopted by the lower courts which required a "clear showing of grievous wrong evoked by new and unforeseen conditions," *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932). It held instead that "a party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstances." *Rufo,* 502 U.S. at 377, 393, 112 S.Ct. 748. According to the Court, modification "may be warranted when changed factual conditions make compliance with the decree substantially more onerous"; "when a decree

proves to be unworkable because of unforeseen obstacles"; "or when enforcement would be detrimental to the public interest." *Id.* at 384, 112 S.Ct. 748.

Although *Rufo* concerned the institutional reform of an instrumentality of government, we have applied the *Rufo* Rule 60(b)(5) equity analysis to other types of cases involving requests for consent decree modification. *See Western Elec. Co.,* 46 F.3d at 1203. In doing so, we reasoned that "the Supreme Court's summary of what might render a modification 'equitable' relates to all types of injunctive relief." *Id.* However, we also noted, as a general proposition, "it should generally be easier to modify an injunction in an institutional reform case than in other kinds of cases." *Id.* Keeping in mind both the flexibility and limitations contained in a Rule 60(b)(5) modification analysis, we will evaluate a request for consent decree modification concerning the in-house reform of a private entity under the *Rufo* standard. Thus, we proceed to address Harris Teeter's request to vacate the consent decree based on its allegation of "a significant change in facts."

■ Applying that standard to the facts before us, we hold that Harris Teeter has not met its burden of demonstrating events or changed facts that "make compliance with the decree substantially more onerous," make the decree "unworkable because of unforeseen obstacles," or make "enforcement [of the decree] detrimental to the public interest." First, Harris Teeter completely fails to demonstrate how any personnel changes, internal reorganization, increase in facility size, or alleged "stigma" attached to being subject to a consent order has made its compliance with the decree "substantially more onerous." Harris Teeter does no more than complain about harms inherent in all injunctive restraints. Second, Harris Teeter does not cite to any "unforeseen *obstacles*" which make compliance with the consent decree "unworkable." Internal compliance mechanisms instituted to effectuate the decree,

company growth not affected by or affecting the consent decree, and any "stigma" attaching to a consent decree do not rise to the level of "obstacles" envisioned by the Supreme Court as justifying relief nor hardly make compliance with the decree "unworkable." *Cf. Rufo*, 502 U.S. at 391, 112 S.Ct. 748 (referring to modification as a means "to resolve the *problems* created by the change in circumstances") (emphasis added). Self-imposed hurdles and hurdles inherent in a consent decree's entry do not count as "obstacles." *Cf. id.* at 380–81, 384, 112 S.Ct. 748 (describing with approval the Third Circuit's reference in *Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d 1114, 1121 (3d Cir. 1979), to "circumstances largely beyond the defendants' control and not contemplated by the court or parties"). Moreover, the company does not even claim that the change in circumstances makes the decree "unworkable." Third, any argument that the continued enforcement of the decree would be "detrimental to the public interest" would seem most unlikely given Harris Teeter's purely private interest in wanting to be free of the decree. Accordingly, we heed the Supreme Court's warning to order modification in light of "*significant* change" and where "*genuine* changes requir[ing] modification" exist. *Id.* at 384, 379, 112 S.Ct. 748 (emphasis added). Therefore, we hold that Harris Teeter has failed to meet its burden of establishing changes which give rise to an entitlement to modification.

Apart from citing to in-house changes and an alleged stigma as grounds to vacate the decree, Harris Teeter points out that there has been no finding of a failure by the company to comply with the decree since the decree's inception. Specifically, the company has complied with the affirmative portions of the order, has never been found to violate the negative portions of the order, and has not engaged in any conduct since 1990 found to violate the NLRA. While we agree that good faith compliance certainly matters, extended compliance alone does not compel the mod-ification of a consent decree. As the Supreme Court explained in *Board of Education v. Dowell*, 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991), a case involving the modification of a desegregation decree, "compliance with previous court orders is obviously relevant." *Id.* at 249, 111 S.Ct. 630. However, *Dowell* and *Rufo* must be read together and the precedent leads us to conclude that compliance over an extended period of time is not in and of itself sufficient to warrant relief. As we noted above, parties who have successfully sought modification have also established events or changed circumstances which "make compliance with the decree substantially more onerous," make the decree "unworkable because of unforeseen obstacles," or make "enforcement [of the decree] detrimental to the public interest." We do not rule out the possibility that an extended period of good faith compliance will convince us to modify a consent decree. However, we find it unnecessary to erect a bright line test regarding the definition of extended good faith compliance or determine how a compliance showing interrelates with a *Rufo* burden or detriment showing in order to deny relief to Harris Teeter because the company fails to establish any significant or genuine burden or detriment caused by the proffered changed circumstances.

Regardless of what the standard would be for an adequate period of compliance, Harris Teeter has failed to establish a "clean" time frame of compliance given the company's post–1986 violations of the NLRA, its failure to adequately explain the numerous charges filed against it, and its failure to adequately explain the settlements it reached between 1986 and 1995. The sparse record provided by the company does not clarify matters. True, the company toned down its tendency to commit unfair labor practices after the entry of the consent decree. However, we are mindful that the reduction in violation frequency might be a reflection of the effectiveness of the prospective fine schedule

contained in the consent order rather than a result of good intentions on the company's part. Nonetheless, Harris Teeter's post–1986 track record shows two litigated decisions, numerous unexplained charges filed against the company, and several unexplained settlements. In short, the company does not carry its burden of showing a clean record of compliance over a substantial period of time. Thus, Harris Teeter does not establish a case for modification on any count.

### III. Conclusion

Harris Teeter fails to establish "a significant change in facts" which would prompt this court to vacate the consent decree. We do not need to delve into the company's failure to address the portion of *Rufo* requiring a party seeking modification to show that "the proposed modification is suitably tailored to the changed circumstance," 502 U.S. at 393, 112 S.Ct. 748, because the company did not prove changed circumstances warranting relief. Therefore, we deny the company's motion to vacate the consent decree.[1]

BLNG, Inc., et al., Intervenors

No. 99–1517.

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 2000.

Decided June 16, 2000.

---

1. In its brief, Harris Teeter stated that it "further s[ought] to dissolve this order based on the suggestion ... of the Ninth Circuit that a failure to request vacation based on good-faith compliance with a consent decree will preclude a party from raising such compliance as a defense to a contempt petition. *See, e.g., NLRB v. Ironworkers Local 433*, 169 F.3d 1217[, 1222] (9th Cir.1999)." Br. of Harris Teeter at 11. Assuming without deciding that the Ninth Circuit intended such a rule, we have never held that a party is required to move for modification or vacation prior to raising a defense of good faith compliance in a contempt proceeding. As a matter of judicial economy, we do not want to encourage parties. subject to consent decrees to come to court challenging a decree merely in order to preserve a defense which may or may not become relevant in some future proceeding.