**SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**Elizabeth L. COLDICUTT, Defendant–Appellant,**

and

**EDP of California Inc.; William L. Woslow; Anthony AJ Williams; Fiona C. Williams; Burnett Grey & Co., Inc.; Fcn Financial Services, Inc.; Thomas D. Coldicutt; Ely J. Mandell, Defendants.**

No. 99–56169.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 9, 2001

Submitted June 19, 2001

Filed Aug. 2, 2001

Alexandra M. Kwoka, Law Office of Alexandra Kwoka, San Diego, California; James D. Henderson, Jr., Charles C. Wehner, Wehner & Perlman, Los Angeles, California, for the defendant-appellant.

Thomas Karr, Securities and Exchange Commission, Washington, D.C., for the plaintiff-appellee.

Before: PREGERSON, CANBY, and DAVID R. THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

In 1992, the district court entered a permanent injunction by default against the appellant, Elizabeth L. Coldicutt, enjoining her from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c) (1994), by selling or offering to sell any securities unless and until a registration statement for such securities had been filed with the Securities and Exchange Commission. In March 1998, Coldicutt filed a motion under Federal Rule of Civil Procedure 60(b)(5) to terminate the permanent injunction. The district court denied the motion, holding that Coldicutt had failed to establish a sufficient change of circumstances. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1994) and we affirm.

I.

In 1990, Coldicutt, a securities broker licensed by the National Association of Securities Dealers, was affiliated with two companies, FCN Financial Services and Burnett Grey & Co. These companies were approached by the principals of a company called EDP to help create a market for

EDP stock. The stock was not registered with the SEC. The SEC alleges that EDP was a "sham" corporation, devoid of any substantial assets, and that EDP submitted fraudulent filings to the SEC, drastically misstating the value and nature of its assets. At the time, Coldicutt was President of Burnett Grey, a broker-dealer firm, and Secretary of FCN, a company that advised clients on taking private companies public, meeting regulatory and compliance requirements relating to such undertakings, and promoting such companies to brokerage firms. In these capacities, she became involved in marketing EDP stock. In 1990, Burnett Grey and FCN made four trades of unregistered EDP stock, in blocks ranging from 75 to 4200 shares.

In marketing the stock, Coldicutt failed to ensure that EDP had registered its offering with the SEC. She also failed to recognize that EDP was apparently a "sham" corporation, which had overstated the value of its assets and which had no real headquarters or employees.

The SEC filed a complaint against Coldicutt, FCN, and Burnett Grey, charging them with violating Sections 5(a) and 5(c) of the Securities Act. Coldicutt failed to respond to the complaint, and the district court entered a default judgment against her, permanently enjoining her from violating the registration requirements of Sections 5(a) and 5(c). Coldicutt subsequently appealed the entry of the default judgment and the accompanying injunction. We affirmed the district court. *See SEC v. Burnett Grey & Co., Inc.*, No. 92–55361, 1993 WL 378756 (9th Cir. Sept.24, 1993).

Since the permanent injunction was entered in 1992, Coldicutt has allowed her trading licenses to expire. She has no involvement in FCN, Burnett Grey, or any other securities enterprise and has become a documentary filmmaker. She has fully complied with the injunction and has stated in a declaration that she will not re-enter the securities field. Coldicutt asserts she wants to terminate the permanent injunction "because I would like to bring closure to this matter, which was extremely unsettling to me and has caused me to experience great personal anxiety and distress."

## II.

■■■ We review for abuse of discretion a district court's denial of a Rule 60(b)(5) motion. *SEC v. Worthen*, 98 F.3d 480, 482 (9th Cir.1996). We may not reverse a district court's exercise of its discretion unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors. *See Valley Eng'rs, Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *Bogovich v. Sandoval*, 189 F.3d 999, 1001 (9th Cir. 1999).

## III.

### A. Rule 60(b)(5) Requirements

Federal Rule of Civil Procedure 60(b)(5) provides, "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

■■■ *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748, 116

L.Ed.2d 867 (1992), sets forth "a general, flexible standard for all petitions brought under the equity provision of Rule 60(b)(5)." *Bellevue Manor Associates v. United States,* 165 F.3d 1249, 1255 (9th Cir.1999). Under *Rufo,* in order to grant a Rule 60(b)(5) motion to modify a court order, a district court must find "a significant change either in factual conditions or in law." 502 U.S. at 384, 112 S.Ct. 748. Modification "may be warranted when changed factual conditions make compliance with the decree substantially more onerous.... Modification is also appropriate when a decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest." *Id.* (citations omitted). In addition, an order must be modified if compliance becomes legally impermissible. *Id.* at 388, 112 S.Ct. 748. Relief from a court order should not be granted, however, simply because a party finds "it is no longer convenient to live with the terms" of the order. *Id.* at 383, 112 S.Ct. 748.

### B. Coldicutt's Changed Circumstances

■ Coldicutt argues that her circumstances have changed so substantially since the injunction was entered that the district court abused its discretion when it denied her motion. She points out that at the time of the 1992 injunction, she was the president and majority owner of a registered broker-dealer firm and had four trading licenses. Now, nine years later, she is no longer involved in brokerage or securities work, has resigned from FCN and Burnett Grey, has allowed her trading licenses to expire, has taken up a new profession, and has declared she will never seek to regain her trading licenses. She has never violated the injunction. Therefore, she argues, there is "simply no danger" that she will violate the injunction in the future.

The SEC responds that the district court properly denied the motion to vacate, on the basis of *Rufo,* because there has been no change in circumstances warranting modification of the injunction. We agree. Coldicutt has failed to demonstrate that, under *Rufo,* changed circumstances have made her compliance substantially more onerous, unworkable because of unforeseen obstacles, detrimental to the public interest, or legally impermissible. *See id.* at 384, 112 S.Ct. 748.

Coldicutt points out that nine years have passed since the injunction was entered, and that she has fully complied during that time. She argues that an extended period of compliance is sufficient to justify terminating an "obey the law" injunction, and cites *SEC v. Warren,* 583 F.2d 115 (3rd Cir.1978), in support of this argument. *Warren,* however, is distinguishable. Unlike the movant in *Warren,* Coldicutt violated a fundamental requirement of the Securities Act—the requirement that stock offerings be registered with the SEC—as opposed to a "technical violation" in "an esoteric area of the law." *See id.* at 120–21. Moreover, in *Warren,* the Third Circuit found it important that subsequent regulations made administrative enforcement by contempt less necessary; here, no such change in regulations has occurred. The procedural posture of *Warren* was also significantly different: there, the Third Circuit affirmed, holding that the district court acted within its discretion. Here, Coldicutt contends the district court *abused* its discretion, a far greater appellate burden than that borne by the appellee in *Warren.*

■ The SEC contends Coldicutt has not carried her burden. Focusing on Coldicutt's nine-year period of compliance, the SEC argues that the mere passage of time does not provide a sufficient reason to terminate the injunction. We agree. As

we stated in *SEC v. Worthen,* 98 F.3d 480 (9th Circ.1996), obedience to a mandate "provides no justification for dissolving the injunction. Compliance is just what the law expects." *Id.* at 482 (quoting *SEC v. Advance Growth Capital Corp.,* 539 F.2d 649, 652 (7th Cir.1976)). This is not to say, however, that a lengthy period of compliance should be given no consideration. Indeed, in *Worthen,* we held that "Worthen had not shown that the *mere* passage of time constituted a significant change in circumstances justifying relief." *Id.* (emphasis added). We did not foreclose consideration of the passage of time in combination with other relevant factors.

This seems to be the view of a majority of our sister circuits. The Third Circuit in *Building and Constr. Trades Council v. NLRB,* 64 F.3d 880 (3rd Cir.1995), held that relevant factors to consider in ruling upon a Rule 60(b)(5) motion include, among others, the length of time since the injunction was entered, whether there has been good-faith compliance, and the likelihood of recurrence absent the injunction. *Id.* at 888. The District of Columbia Circuit, in *NLRB v. Harris Teeter Supermarkets,* 215 F.3d 32 (D.C.Cir.2000), held that although good-faith compliance matters, "compliance over an extended period of time is not in and of itself sufficient to warrant relief." *Id.* at 36. The Tenth Circuit may hold a contrary view. In *SEC v. Thermodynamics, Inc.,* 464 F.2d 457 (10th Cir.1972), a pre-*Rufo* decision, the court stated that "where the defendant concerned is an individual, and where the alleged violation leading to the injunction was an incident of limited scope or duration, the passage of a substantial period of time with full compliance and with no other violations may be regarded as a significant factor showing a 'change' " for purposes of terminating the injunction. *Id.* at 461. "In reality, this is about all an individual can show under these circumstances." *Id.* The Tenth Circuit in *Ther-*

*modynamics,* however, upheld the district court's denial of the movant's motion to vacate the injunction, relying on the district court's considerable discretion and commenting that "the standards for a change in any injunction are difficult to meet." *Id.*

■ Consistent with our decision in *Worthen,* and with the views expressed by the Third and D.C. Circuits, we hold that an extended period of compliance is a factor supporting termination of an injunction, but more is required. Coldicutt argues she has shown more. She asserts she has allowed her trading licenses to expire, has changed her profession, and has promised not to seek to regain her licenses. She contends these changes of circumstances, coupled with her nine-year period of compliance, the stigma of the injunction, and the distress it causes her, are so substantial that the injunction should be terminated. In support of her argument she cites *Spangler v. Pasadena City Bd. of Ed.,* 611 F.2d 1239 (9th Cir. 1979), a case in which we relied in part on the passage of time to reverse a district court's denial of a motion to terminate three injunctions. The injunctions in *Spangler* had been in place for some nine years and required district court supervision of a local school board's integration efforts.

*Spangler* involved circumstances far different from those in this case. The injunctions in *Spangler* required extensive judicial oversight of an area traditionally controlled by local government. With regard to that we commented: "The displacement of local government by a federal court is presumed to be temporary." *Id.* at 1241. No such federalism concern or temporal circumscription applies in this case. *Spangler* is inapposite.

SEC does not dispute that Coldicutt's trading licenses have expired and that

she has left the securities field, but it dismisses as irrelevant her stated intention not to regain her licenses, noting that nothing bars her from returning to the securities field at any time. The SEC also observes that Coldicutt has changed her occupation several times. In addition to working as a securities broker, she has worked as a concert pianist, a geologist, and now a documentary filmmaker. Another career change, perhaps back to a securities broker, is not out of the question. The SEC also points out that even without a securities license, Coldicutt could violate the injunction by attempting to market unregistered securities, for example on the Internet. To offer stock for sale on the Internet, a person need not have access to any exchange or system restricted to licensed brokers. *See SEC v. Colvin,* SEC Litigation Release No. 16,142, 69 SEC Docket 1866, 1999 WL 297799 (May 13, 1999) (describing a grant of summary judgment against defendants for making fraudulent representations in offering and selling unregistered securities through Internet Web sites); *In re Davis,* SEC Release No. 33–7756, 70 SEC Docket 2044, 1999 WL 955648 (Oct. 20, 1999) (announcing settlement of charges against a defendant for fraudulent sale of unregistered securities on eBay); *see also Continental Marketing Corp. v. SEC,* 387 F.2d 466 (10th Cir.1967) (holding non-broker's sales of "investment contracts" violated antifraud provisions of Securities Act).

Given that Coldicutt could violate the injunction without a trading license or affiliation with a brokerage firm, her promise not to regain her licenses does not guarantee against a future violation. In addition, the fact that she has voluntarily changed her occupation does not suggest her compliance with the injunction has become "substantially more onerous" or "unworkable because of unforeseen obstacles," or that her compliance creates a "detriment[ ] to the public interest." *Rufo,* 502 U.S. at 384, 112 S.Ct. 748; *see also Harris Teeter,* 215 F.3d at 35–36.

In *Harris Teeter,* a case involving an NLRB proceeding, the D.C. Circuit denied a Rule 60(b)(5) motion to vacate a consent decree the court had previously approved. The defendant corporation's evidence of personnel changes, internal reorganization, increased facility size, and stigma was held to be insufficient to establish that compliance had become substantially more onerous. The defendant corporation had provided no evidence of unforeseen obstacles, and its "purely private interest in wanting to be free of the decree" did not affect the public interest. *See Harris Teeter,* 215 F.3d at 35–36.

As in *Harris Teeter,* Coldicutt asks us to consider, in addition to her other circumstances, the stigma caused by the injunction. She contends the injunction causes her to suffer "great personal anxiety and distress" and that she wants "closure." Other than these subjective concerns, however, she has identified no difficulty in remaining subject to the terms of the injunction. She cites no objective adverse consequence such as a lost job or business opportunity, or any other hardship. *Cf. Warren,* 583 F.2d at 122.

Coldicutt contends she is not required to make a showing of hardship. She argues the district court improperly contrasted her circumstances to the hardship suffered by the movant in *Warren.* She contends that in *Bellevue Manor,* we rejected a need to show "extreme and unexpected hardship," as earlier set forth in *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 911 F.2d 363 (9th Cir.1990), and instead adopted the "new, more flexible standard" of *Rufo. See Bellevue Manor,* 165 F.3d at 1255–56.

Coldicutt misconstrues our *Bellevue Manor* holding. There we considered hardship to the defendant to be part of the *Rufo* analysis. *See id.* at 1254, 1257. Here, in considering the hardship to Coldicutt, the district court properly contrasted her circumstances to those of the movant in *Warren,* who suffered significant adverse consequences making compliance with the injunction substantially more onerous: the injunction caused him to resign several professional positions, foreclosed him from consideration for another, and precluded him from "several substantial business opportunities." *See Warren,* 583 F.2d at 122.

## IV.

In sum, Coldicutt established that she has complied with the injunction for nine years, that the stigma of the injunction causes her embarrassment and distress, and that there is little likelihood she will again become active as a securities broker or be involved in the securities business. She failed to demonstrate, however, that compliance with the injunction has become substantially more onerous, unworkable because of unforeseen obstacles, detrimental to the public interest, or legally impermissible. *See Rufo,* 502 U.S. at 384, 388, 112 S.Ct. 748. In these circumstances, we cannot say the district court committed a clear error of judgment, failed to apply the correct law, or rested its decision on a clearly erroneous finding of material fact. *See Valley Eng'rs,* 158 F.3d at 1057; *Bogovich,* 189 F.3d at 1001. Accordingly, we conclude the district court did not abuse its discretion in denying Coldicutt's motion under Rule 60(b)(5) to terminate the injunction.

AFFIRMED.