STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re:  Appeal of Cumberland Farms | } | Docket No. 196-9-02 Vtec |
| (Dunkin' Donuts Site Plan Application) | } |  |
|  | } |  |

Decision and Order on V.R.C.P. 60(b)(5) Motion for Relief from Consent Order

Petitioner-Applicant Damartin Quadros has moved under V.R.C.P. 60(b)(5) for relief from a consent order entered in this matter in 2003, and requests that the Court "approve the 2006 site plan as approved by the DRB [in 2007]."[1]

The above-captioned appeal was originally brought by Appellant Cumberland Farms, Inc., from a site plan approval decision of the then-Planning Commission of the City of Montpelier. Appellant is represented by Jon T. Anderson, Esq., and David W. Rugh, Esq., and Petitioner-Applicant is represented by Robert Halpert, Esq. and Stephen L. Cusick, Esq. The City of Montpelier is represented by Amanda S.E. Lafferty, Esq., but did not file memoranda on the present motion.

Petitioner-Applicant had first applied for site plan approval in 2001 to remove an existing building and to construct a Dunkin' Donuts restaurant and retail store at the subject property on Berlin Street (U.S. Route 2). That application was denied by the

---

[1] Appellant had appealed the 2007 DRB decision to this Court in Docket No. 143-7-07 Vtec. In this Court's October 31, 2007 decision in that appeal, the Court vacated the 2007 DRB decision on the basis that reopening the 2003 Consent Order to eliminate the condition precluding drive-through service had not been done, and was a prerequisite to Petitioner-Applicant's making the new application to the DRB. If Petitioner-Applicant's present motion were to be granted, it still would not vest this Court with jurisdiction over the merits of the 2006 site plan amendment, it would only allow Applicant to make his application to the DRB.

1

Planning Commission for several reasons, including problems with traffic access and circulation resulting from a drive-through lane and drive-up window proposed in the 2001 application. No party appealed the denial, and it became final.

Instead, in 2002, Petitioner-Applicant filed a revised application for site plan approval for the construction of the same project, but without a drive-through lane or drive-up window. The Planning Commission approved the revised site plan. In September of 2002, Appellant Cumberland Farms, Inc., adjoining the property on its western boundary, filed the above-captioned appeal of the 2002 site plan approval in Environmental Court.

The parties settled the appeal just prior to a scheduled trial. They stipulated to a Court order (the 2003 Consent Order).

Essential to understanding the procedural posture of the attempted amendment application is the fact that the 2003 Consent Order did not merely grant site plan approval with agreed conditions for the construction of the Dunkin' Donuts restaurant and retail store. If the 2003 Consent Order had done so, then any proposed amendment or successive application could simply have gone before the DRB, and any issues as to the propriety of a successive application[2] would have properly come to the court on appeal from the DRB

---

[2] It is in the nature of development proposals that they may change over time, as circumstances change. The statute contemplates such changes in 10 V.S.A. § 4470(a), the City's ordinance also provides for it in § 207. As this Court explained in In re R.L. Vallee PUD (Spillane's), Docket No. 100-5-07 Vtec, slip op. at 4 (Vt. Envtl. Ct., Aug. 17, 2007), a successive application may generally be presented to the DRB if there has been a substantial change in the law or the external circumstances, or in the application itself, especially if the application has been redesigned to address concerns that caused a previous denial. The standard for a DRB to determine whether it wishes to consider an application for an amended site plan may be similar in some respects to the standard for vacating a consent decree, but it is by no means identical, as discussed below. In any event, the issue of whether the 2006 site plan amendment application may be considered as a successive application is not before the Court in this appeal.

2

(as was attempted prematurely in Docket No. 143-7-07 Vtec). That is, in the absence of the 2003 Consent Order, Petitioner-Applicant would only have had to apply to the DRB for an amended site plan, regardless of whether the 2003 site plan had been approved by the DRB without appeal, or had been approved by this Court de novo.

By contrast, in the present case, the 2003 Consent Order contained two specific conditions that were conditions of the consent order itself. That is, they were conditions of the settlement of the appeal in this Court. The 2003 Consent Order also contained some stipulated changed conditions of the site plan approval for the construction of the building. The two conditions of the 2003 Consent Order itself are found in Paragraph 3: "[d]eliveries of product to the project shall not occur during the hours of 7:00 a.m. [to] 9:00 a.m.;" and in Paragraph 5: [t]he project shall not include a drive-up service window or drive-through service."

The project was constructed without the drive-up service window or drive-through service, and has been operating for approximately three-and-a-half years.

Without moving for relief from the condition imposed by Paragraph 5 of the 2003 Consent Order, in 2006 Applicant applied to the DRB for site plan approval of "the addition of a drive-through lane" at the project property, including changes to the access and circulation of the site, the installation of a drive-up window and speaker, and the elimination of parking spaces.[3]

In June of 2007 the DRB approved the changed site plan, including the drive-up window and speaker and drive-through service. The DRB decision also required Applicant

---

[3] The condition regarding parking spaces was part of the site plan approval, and in any event was the subject of an unappealed amendment to the site plan approval. Therefore, unlike the proposed amendment regarding the drive-through service, any proposed amendment to the number or configuration of the parking spaces is a question of successive application for the DRB in the first instance, and not for this Court.

to perform a follow-up traffic study for one year, after which "Applicant will address any issues raised by staff review of the traffic study." The 2007 DRB decision did not analyze the application under 24 V.S.A. § 4470(a) or explain why it was an acceptable successive or amendment application, except to state, in paragraph 2 of its findings, that "[a]n additional change is the passage of time and experience with the site in the three years since the original application."

Appellant appealed the 2007 DRB decision to this Court in Docket No. 143-7-07 Vtec. As noted in footnote 1, above, this Court vacated the 2007 DRB decision on the basis that reopening the 2003 Consent Order to eliminate the condition precluding drive-through service was a prerequisite to Petitioner-Applicant's making that new application[4] to the DRB. Petitioner-Applicant appealed that decision to the Vermont Supreme Court; it has been assigned Docket No. 2007-468 at the Supreme Court.

Petitioner-Applicant then filed the present motion in the above-captioned case, seeking relief from the 2003 Consent Order under V.R.C.P. 60(b)(5) and approval[5] of the 2006 site plan amendment.

---

[4] In that decision, the Court specifically did not reach the question of whether any factors warranted a successive application, or whether § 307 of the ordinance allows such an application regardless of those factors. Petitioner-Applicant's memoranda (e.g., January 22, 2008 at p. 4) characterize the Court as determining in the present case 'whether the successive application doctrine applies' or as 'applying the standards in § 307 for amending a site plan.' To the contrary, all that the Court is doing in the present case is to determine whether Petitioner-Applicant has shown grounds to vacate or change the 2003 Consent Order under V.R.C.P. 60(b)(5). If the Court were to grant relief from the 2003 Consent Order, then at that time it would be necessary to determine whether to remand the whole application to the DRB for it to consider an amended site plan application (as the 2002 application did not include a drive-through proposal). See Cliche v. Cliche, 143 Vt. 301, 307 (1983).

[5] See footnote 1, above.

As this Court explained in the October 31, 2007 Decision and Order in Docket No. 143-7-07 Vtec, slip. op at 3:

> In general, "[o]nce a stipulation is incorporated into a final order, concerns regarding finality require that the stipulation be susceptible to attack only on grounds sufficient to overturn a judgment." Pouech v. Pouech, 2006 VT 40, ¶ 20, 180 Vt. 1, 11. That is, once a party agrees to a stipulation, that party is bound by it, and the course of the trial is determined by it. Eurich v. Coffee-Rich, Inc., 130 Vt. 537, 542 (1972); Cooper v. Savage, 145 Vt. 223, 225 (1984). The parties are similarly bound by a final order incorporating the stipulation, unless the court that issued the final order grants a party relief from that final order. Pouech, 2006 VT 40, ¶ 20; Dunbar v. Gabaree, 135 Vt. 269, 270–71 (1977).

In moving for relief from the 2003 Consent Order that incorporated the parties' stipulation, Petitioner-Applicant argues under V.R.C.P. 60(b)(5) that the new proposed changes to the site plan make it "inequitable to continue to enforce the prohibition on the drive-through" to which he had agreed in 2003.

Generally, V.R.C.P. 60(b) "does not operate to protect a party from freely made tactical decisions which in retrospect may seem ill advised." Wild v. Brooks, 2004 VT 74, ¶ 20, 177 Vt. 171, 180; Juster v. Juster, 2007 VT 111, ¶ 4; and see, e.g., Goshy v. Morey, 149 Vt. 93, 97 (1987). Relief from one aspect of a stipulation (e.g., no drive-through service) without vacating the remainder of the stipulation (e.g., approval of construction of the building) is particularly disfavored because "the granting of partial relief alters the parties' original agreement and generally causes one of the parties to bear the burdens of the agreement while foregoing its benefits." Hood v. Hood, 146 Vt. 195, 197 (1985).

V.R.C.P. 60(b)(5) provides, like the analogous federal rule, that the court may relieve a party from a final judgment or order for the reason that the judgment has been satisfied, or a prior judgment on which it is based has been reversed or otherwise vacated, or that "it is no longer equitable that the judgment should have prospective application."

This relief is available with respect to judgments, including consent judgments, that

5

have prospective effect. "It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes enforcement [of the judgment or decree] inequitable." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil2d § 2863, text at n.19. Justice Cardozo stated the basic principles in <u>United States v. Swift & Co.</u>, 286 U.S. 106, 119 (1932):

> Life is never static, and the passing of a decade has brought changes to the grocery business as it has to every other. The inquiry for us is whether the changes are so important that the dangers, once substantial, have become attenuated to a shadow. No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

These principles have been restated and followed in federal cases into the present day, See, e.g., <u>Humble Oil & Refining Co. v. American Oil Co.</u>, 405 F.2d 803, 813 (8th Cir., 1969), cert. denied, 395 U.S. 905 ("caution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements"), with some modifications giving flexibility in institutional reform litigation. <u>Rufo v. Inmates of Suffolk County Jail</u>, 502 U.S. 367 (1992). See <u>Sierra Club v. Meiburg</u>, 296 F.3d 1021, 1033–34 (11th Cir. 2002) (order modifying consent decree reversed, as statutory and regulatory regime had not changed since consent decree originally entered, [delay in implementation] did not rise to the level of a changed circumstance, and nothing had changed to make the consent decree ineffective).

As followed by the Vermont Supreme Court in <u>J.L. v. Miller</u>, 158 Vt. 601, 604 (1992), also an institutional reform case, the standards articulated in <u>Rufo</u> require that:

> A party seeking modifications under Rule 60(b)(5) now has the burden of showing either a "significant change in factual conditions or in law." Modification of a decree is warranted when "changed factual conditions make compliance . . . substantially more onerous." * * * The Court cautioned, however, that notwithstanding a more flexible approach,

6

clarifications in the law do not provide a basis for modification unless the parties had "based their agreement on a misunderstanding of the governing law," and that Rule 60(b)(5) provides relief when continued enforcement of the decree would be inequitable, not merely inconvenient. To hold otherwise, the Court noted, would "open the door for relitigation of the merits of every affected consent decree[,] would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements . . . ."

J.L. v. Miller, 158 Vt. at 604 (internal citations to Rufo omitted).

Although courts recognize that "it should be generally easier to modify an injunction in an institutional reform case than in other kinds of cases," courts have applied the Supreme Court's summary in Rufo of "what might render a modification 'equitable'" to other types of injunctive relief. N.L.R.B. v. Harris Teeter Supermarkets, 215 F.3d 32, 35 (D.C. Cir. 2000) (citing United States v. Western Elec. Co., 46 F.3d 1198, 1203 (D.C. Cir. 1995)). Essentially, the movant has the "burden of demonstrating events or changed facts that 'make compliance with the decree substantially more onerous,' make the decree 'unworkable because of unforeseen obstacles,' or make 'enforcement [of the decree] detrimental to the public interest.'" Harris Teeter, 215 F.3d at 35. "Self-imposed hurdles and hurdles inherent in a consent decree's entry do not count as 'obstacles.'" Id. at 36.

Petitioner-Applicant has not met this burden. He has not come forward with evidence of any changed circumstances that make compliance with Paragraph 5 of the 2003 Consent Order substantially more onerous than it was when Petitioner-Applicant agreed to the condition in order to settle the appeal, build his building, and open for business. Petitioner-Applicant has not come forward with evidence of any changed circumstances that make compliance with Paragraph 5 of the 2003 Consent Order unworkable because of any unforeseen obstacles; indeed, the only obstacle is by definition not "unforeseen" as it is that contained in Paragraph 5 itself. Nor has Petitioner-Applicant come forward with evidence that continued imposition of Paragraph 5 of the 2003 Consent Order is in any

7

way detrimental to the public interest.

Indeed, Petitioner-Applicant has not even come forward with an affidavit or other evidence to counter the affidavit of Robert Chamberlin, P.E., submitted by Appellant. Petitioner-Appellant has not come forward with evidence to support a claim that any traffic characteristics on Route 2 (Berlin Street) have changed or that the new proposed site plan would prevent the problem of traffic queuing for the drive-through lane thereby causing a back-up of traffic into or an impediment to the free flow of traffic on Route 2 affecting Appellant's neighboring driveway onto Route 2.  See Keith v. Mullins, 162 F.3d 539, 541 (1998) (modification of injunction not justified "on the present record;" on remand "[i]f either party shows the existence of a genuine issue of material fact relevant . . . [the trial court] should hold an evidentiary hearing.")

Thus, regardless of whether this proposed amendment to the approved site plan could have been considered by the DRB in the absence of the 2003 Consent Order, on the present showing it does not warrant relief under V.R.C.P. 60(b)(5) from the provisions of the 2003 Consent Order.  Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Petitioner-Applicant's Motion under V.R.C.P. 60(b)(5) for relief from the 2003 Consent Order is DENIED.

Done at Berlin, Vermont, this 18th day of April, 2008.

_____
Merideth Wright
Environmental Judge