**REPUBLICAN NATIONAL COMMITTEE and Haley Barbour, Appellees,**

v.

**Gene TAYLOR, et al., Appellants.**

Nos. 00–7210 & 00–7211.

United States Court of Appeals, District of Columbia Circuit.

Argued May 3, 2002.

Decided Aug. 20, 2002.

Lawrence R. DeMarcay III argued the cause for appellant Gene Taylor. With him on the briefs was George J. Fowler III. Bruce E. Aitken entered an appearance.

Charles P. Resor argued the cause pro se.

Thomas W. Kirby argued the cause for appellees. With him on the brief was Jan W. Baran.

Before: EDWARDS, HENDERSON, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

After publishing an offer to pay one million dollars to the first person who could demonstrate that a statement about Republican plans for Medicare spending was false, the Republican National Committee (RNC) denied all claims for the prize. Two of those claims are now before this court. The RNC prevailed in the district court on its motion for summary judgment, and we affirm.

I

In December 1995, the Republican National Committee ran an advertisement in the newspapers *USA Today* and *Roll Call*. The ad is reproduced at the end of this opinion, and we summarize its most salient features here. Prominently featured at the top of the ad is a photograph of Haley Barbour, then chair of the RNC, holding an oversized check for one million dollars, payable to "your name here." Next to and below Barbour's image, the following text appears:

Heard the one about Republicans 'cutting' Medicare? The fact is Republicans are increasing Medicare spending by more than half. I'm Haley Barbour, and I'm so sure of that fact I'm willing to give you this check for a million dollars if you can prove me wrong.

The advertisement goes on to assert that under the Republican plan, the govern-

ment would increase Medicare spending over the next seven fiscal years, culminating in a 2002 expenditure 62% higher than that in 1995. In the bottom right portion of the ad, framed in a border to look like a coupon, the following appears:

> ## MILLION DOLLAR MEDICARE CHALLENGE
>
> ### HERE'S WHY YOU HAVE NO CHANCE FOR THE MILLION DOLLARS
>
> The Republican National Committee will present a cashier's check for $1 million to the first American who can prove the following statement is false: **"In November 1995, the U.S. House and Senate passed a balanced budget bill. It increases total federal spending on Medicare by more than 50% from 1995 to 2002, pursuant to Congressional Budget Office standards."** Responses must be postmarked by December 20, 1995.

The ad then invites readers who disagree with the bold text in quotation marks (the "Challenge Statement") to check a box labeled "I don't believe you, Haley" and return the coupon with their analyses of "why you are wrong" to the RNC's Washington, D.C. address.

Approximately eighty people across the country did not believe Haley and mailed in claims for the million-dollar prize. The RNC responded to each claimant by sending him or her a form letter rejecting the claim as incorrect, and enclosing a Congressional Budget Office report. After one rejected claimant filed a breach of contract suit in the Superior Court of the District of Columbia, the RNC and Barbour (hereinafter the RNC) posted a million-dollar bond and filed a statutory interpleader action against all of the claimants in the United States District Court for the Southern District of Mississippi, pursuant to 28 U.S.C. §§ 1335, 2361. The Mississippi district court subsequently determined that Washington, D.C. was the more appropriate forum, and transferred the interpleader action to the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 1404(a). *Republican Nat'l Comm. v. Taylor*, No. 4:97CV5LN (S.D. Miss. Mar. 19, 1997) (hereinafter Mississippi Decision).

When the case was transferred to the federal district court in this district, a number of the original interpleader defendants failed to press their claims, and their cases were dismissed. One claimant settled with the RNC. The RNC then moved for summary judgment against the remaining claimants, on two principal grounds: (1) that the advertisement was merely a "parody" and not binding on the RNC; and (2) that even if the ad were an offer to contract, the Challenge Statement was not

false. Although the court rejected the first argument, it accepted the second and granted summary judgment against all of the claimants. *Republican Nat'l Comm. v. Taylor*, No. 97–0691 (D.D.C. July 6, 2000) (hereinafter District Court Decision).

Only four claimants appealed the grant of summary judgment. One appeal was dismissed because the appellant failed to file a timely notice of appeal. Another panel of this court summarily affirmed the judgment against a second. The appeals of the remaining two claimants, Representative Gene Taylor and Charles P. Resor, are addressed in this opinion.[1]

## II

We review a grant of summary judgment de novo, affirming only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Levitan v. Ashcroft*, 281 F.3d 1313, 1317 (D.C.Cir.2002) (citing Fed.R.Civ.P. 56(c)). As an initial matter, we must determine which jurisdiction's law applies. None of the parties addressed this question in their briefs, relying instead on "the general law of contracts" and citing decisions from a myriad of state and federal courts.

In a case like this one, in which jurisdiction is founded on the diversity of the parties' citizenship, we apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Young Women's Christian Ass'n v. Allstate Ins. Co. of Canada*, 275 F.3d 1145, 1150 (D.C.Cir.2002). The fact that the RNC filed the case under the federal interpleader statute, 28 U.S.C. § 1335, does not change the analysis as that statute rests on diversity jurisdiction. *Griffin v. McCoach*, 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481 (1941) (applying forum state's choice-of-law rules in statutory interpleader action); *see Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320–21 (8th Cir. 1991). Moreover, although this case was transferred to the federal district court for the District of Columbia, we continue to apply the choice-of-law rules of the state— Mississippi—in which the case was originally filed. *Ferens v. John Deere Co.*, 494 U.S. 516, 518–19, 110 S.Ct. 1274, 1277–78, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964).

In deciding choice-of-law questions, Mississippi applies the "center of gravity" test. *Sheppard Pratt Physicians, P.A. v.*

---

1. The RNC moved to dismiss Taylor's appeal on the ground that his notice of appeal, although signed by out-of-town counsel, was not signed by a member of the district court bar, in violation of D.D.C. Local Civ. R. 83.2(c)(1) ("All papers submitted by nonmembers of the Bar of this Court must be signed by such counsel and by a member of the Bar of this Court joined in compliance with this Rule."). As the notice of appeal is a district court filing, Fed. R.App. P. 3(a)(1), the local rule is made applicable by Fed. R.App. P. 1(a)(2) ("When these rules provide for filing a motion or other document in the district court, the procedure must comply with the practice of the district court."). Nonetheless, we deny the motion. While a notice of appeal must be signed by counsel, Fed.R.Civ.P. 11(a),

the Supreme Court has recently held that even the complete absence of a signature does not deprive a court of appeals of jurisdiction, *Becker v. Montgomery*, 532 U.S. 757, 766, 121 S.Ct. 1801, 1807, 149 L.Ed.2d 983 (2001). A fortiori, an error as to which attorney signed the notice is nonjurisdictional. Under such circumstances, a court of appeals has discretion to treat a filing irregularity "as it considers appropriate." Fed. R.App. P. 3(a)(2). And because "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court," *Becker*, 532 U.S. at 767, 121 S.Ct. at 1808, we decline to dismiss the appeal for this technical violation.

*Sakwa,* 725 So.2d 755, 757 (Miss.1998) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)); *see Gann v. Fruehauf Corp.,* 52 F.3d 1320, 1324 (5th Cir.1995). As best we can determine from the record, the jurisdiction that is the center of gravity of this case is the District of Columbia—the location of the RNC's headquarters, the place where one of the two newspapers carrying the advertisement is published, and the address to which all of the claims were mailed. Indeed, that was essentially the reason given by the Mississippi district court for transferring the case to the District of Columbia in the first place. *See* Mississippi Decision, slip op. at 9 ("[T]he clear focus of the events giving rise to this action was the District of Columbia, from which the 'contest' or 'challenge' was devised and published and to which all 'contestants' or 'challengers' sent their responses.").[2] Moreover, where, as here, the parties do not raise the choice-of-law issue either in the district court or on appeal, courts generally apply the law of the jurisdiction in which they sit. *See, e.g., Cavic v. Grand Bahama Dev. Co.,* 701 F.2d 879, 882–83 (11th Cir. 1983); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 136 cmt. h; EUGENE F. SCOLES & PETER HAY, CONFLICT OF LAWS § 12.19, at 426–27 (2d ed.1992). In any event, none of the parties cited any Mississippi cases

in their briefs, and at oral argument none suggested any way in which Mississippi law differs from that of the District of Columbia on the issues that are relevant to our decision. We will therefore apply the contract law of the District in resolving this appeal.

### III

In the district court, the RNC contended that its advertisement was intended merely as a parody, and not as a document that could bind it to make payment to a successful claimant. The district court rejected that contention, holding that the ad was "an offer for a valid unilateral contract, which anyone could have accepted by rendering performance in the manner indicated." District Court Decision, slip op. at 9.[3] On appeal, the RNC does not dispute that holding. We therefore turn to the remaining question: the meaning of the contract offered by the RNC.

Under District of Columbia law, the meaning of a contract "is an issue for the finder of fact only if the contractual language is ambiguous, i.e., where its interpretation depends upon the credibility of extrinsic evidence or upon a choice of reasonable inferences from such evidence." *Dodek v. CF 16 Corp.,* 537 A.2d 1086, 1092 (D.C.1988) (citations omitted).[4] "Ambiguity exists only if the court determines that

**2.** The only factor weighing in favor of Mississippi law is that it is the state of residence of Barbour and of one of the interpleader defendants, Representative Taylor. Both individuals, however, worked in Washington, D.C. at the time, *see* Mississippi Decision, slip op. at 7, 9, and at oral argument Barbour argued that D.C. law should apply.

**3.** *See Opton, Inc. v. FDIC,* 647 A.2d 1126, 1134 n. 6 (D.C.1994) (stating that a unilateral contract is one in which the promissor makes a promise in exchange for a proposed act, and that "[p]erformance of the act constitutes acceptance of the offer, and at that point a contract comes into being" (internal quotation marks omitted)); *Minton v. F.G. Smith Piano Co.,* 36 App. D.C. 137 (1911) ("The

advertised offer of a reward or premium for the performance of a specified act is a proposition submitted to all persons who may accept and comply with its conditions. Until accepted it may be withdrawn; but when accepted, it becomes a binding contract between the proposer and the acceptor who shall have performed the service or done the act required."); *cf. Rosenthal v. Al Packer Ford, Inc.,* 36 Md.App. 349, 374 A.2d 377, 379–82 (1977) (discussing "prove me wrong" cases).

**4.** *See 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.,* 485 A.2d 199, 205 (D.C.1984) (holding that "the interpretation of an integrated contract is a question of law unless it depends on the credibility of extrinsic evidence or on a

proper interpretation of the contract depends upon evidence outside the contract itself," and "[w]hether such ambiguity exists is a question of law for the court to determine." *Id.* at 1092–93. Where, as here, "[n]one of the parties ... contends that extrinsic evidence is at issue," but instead the parties "merely present[ ] two competing versions of what [they] intended by the disputed language," the contract's meaning is a question for the court to decide. *Id.* at 1093; *see 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C.1984). In any case, we do not regard the Challenge Statement as ambiguous with respect to either of the two claims that remain in this case.

### A

■ As noted above, the Challenge Statement consists of the following two sentences:

> In November 1995, the U.S. House and Senate passed a balanced budget bill. It increases total federal spending on Medicare by more than 50% from 1995 to 2002, pursuant to Congressional Budget Office standards.

Representative Taylor does not disagree with the second sentence's assertion regarding increases in Medicare spending. Letter from Taylor to Barbour 1 (Dec. 14, 1995) (J.A. at 121). Instead, he focuses on the first sentence, and argues that it is false because the bill in question, which all agree was H.R. 2491 of the 104th Congress, did not and could not actually balance the budget in fiscal year 1996. Taylor does not dispute that the bill included a plan for 1996 through 2002 that, if followed, would have balanced the budget by fiscal year 2002. But Taylor argues (without disagreement from the RNC) that the

bill did not even purport to balance the budget completely in 1996. *See* CONGRESSIONAL BUDGET OFFICE, THE ECONOMIC AND BUDGET OUTLOOK: DECEMBER 1995 UPDATE at 10 ("Under the policies of the Balanced Budget Act, the deficit would decline to $151 billion in 1996"). As a consequence, Taylor concludes, it is false to describe the bill as a "balanced budget bill."

There are two problems with Taylor's reading of this sentence. First, the sentence does not appear to represent an independent assertion, but instead serves merely as a referent for the assertion (and challenge) contained in the second sentence, which declares: "It increases total federal spending on Medicare...." That is, the first sentence simply makes clear that the "it" in the second sentence is the "balanced budget bill." This conclusion is confirmed by the fact that, other than the words "a balanced budget bill" in the first sentence, there is no mention anywhere in the advertisement of a claim that Republicans are balancing (or have balanced) the budget. By contrast, the point of the ad, repeated in virtually every section and in bold letters, is plainly its assertion that "Republicans are increasing Medicare spending."

Nor is "a balanced budget bill" an obscure or surprising way to refer to the bill in question, since the first sentence of H.R. 2491 states: "This Act may be cited as the 'Balanced Budget Act of 1995.'" H.R. CONF. REP. No. 104–350, at 1 (1995). And Taylor does not dispute that H.R. 2491 was commonly referred to as the "balanced budget bill." Nonetheless, he argues that the Challenge Statement "should have read '*the* balanced budget bill,'" rather than "*a* balanced budget bill," "if the RNC had wanted to indicate that it was

choice among reasonable inferences to be drawn from extrinsic evidence" (citing RESTATEMENT (SECOND) OF CONTRACTS § 212(2) (1981))); *see also id.* at 205 n. 6 ("Analytical-

ly, of course, the question of what the parties intended is clearly a question of fact. But the courts have long called it a question of law." (internal quotation marks omitted)).

referring to H.R. 2491 specifically and not the task of balancing the budget." Taylor Br. at 25. This seems to us, however, to put too much weight on the substitution of the indefinite for the definite article, and is insufficient to create ambiguity as to the meaning of the advertisement.

Second, even if we were to read the first sentence of the Challenge Statement as making an affirmative claim that the bill would balance the budget rather than merely increase Medicare spending, we cannot read it as claiming to do so in a single year. Again, almost every section of the advertisement refers to the Republicans' plan for spending *over seven years*, culminating in 2002. Indeed, the second sentence of the Challenge Statement itself refers to spending "from 1995 to 2002." Thus, we find no ambiguity with respect to this claim, and conclude that the Challenge Statement does not falsely allege that the Republicans' plan would balance the federal budget in a single year.

## B

■ Charles Resor's claim focuses on the second sentence of the Challenge Statement: the assertion that H.R. 2491 "increases total federal spending on Medicare." Resor does not dispute that the bill, if passed, would have increased Medicare spending. *See* Resor Br. at 8–9. But he contends that the assertion that the bill "increases" spending is false because the President vetoed the bill and Congress never overrode the veto.[5] As Resor explains, "only 'laws,' not 'bills,' can increase federal spending." Resor Br. at 16 (citing U.S. CONST. art. I, § 7, cl. 2).

The flaw in Resor's argument is that the present tense, "increases," is both commonly and grammatically used to indicate future action. *See* AMERICAN HERITAGE BOOK OF ENGLISH USAGE § 68 (1996). A search of Westlaw's "AllNews" and "Congressional Record" databases, for example, discloses hundreds of instances in which journalists and members of Congress describe the effect of unenacted legislation with variants of the phrase, "This bill increases ...," by which the speaker means that the bill will do so if and when it becomes law.[6] Nor could a reader of the advertisement have been misled into thinking that the RNC's claim was that the bill was already enacted, or that it would have force before it was enacted. As Resor himself notes, the Constitution distinguishes between a "bill" and a "law,"[7] and

6. *See, e.g., For the Record*, WASH. POST, Dec. 20, 2001, at T17 ("The bill increases spending for the National Missile Defense by 60 percent.... "); *Education Bill Passes*, N.Y. TIMES, June 17, 2001, § 4, at 2 ("The bill increases the role of the federal government in local schools...."); 148 Cong. Rec. H5246 (daily ed. July 23, 2002) (statement of Rep. Chambliss) ("[T]his bill increases funding for this important facility...."); 148 Cong. Rec.

S4044 (daily ed. May 8, 2002) (statement of Sen. Kerry) ("This bill increases spending for land and water conservation programs...."); *see also United States v. Dotterweich*, 320 U.S. 277, 283 n. 2, 64 S.Ct. 134, 137 n. 2, 88 L.Ed. 48 (1943) ("[T]he Bill 'increases substantially the criminal penalties....'" (quoting H.R. REP. No. 75–2139, at 4 (1937))); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C.Cir.1994) (" '[T]he Senate bill increases incentives, financial and otherwise, for private individuals to bring suits....'" (quoting S.REP. No 99–345, at 1–2 (1986))).

7. U.S. CONST. art. I, § 7, cl. 2 ("Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States....").

the Challenge Statement correctly refers to H.R. 2491 as a "bill" passed by "the U.S. House and Senate." Indeed, the advertisement expressly refers to its spending projections as a "plan."

In his letter to the RNC, Resor wrote: "Your statement, perhaps, would have been correct if it had used the words '*would* have increased' instead of 'increases,'" thus "acknowledg[ing] the hypothetical nature of the statement." Letter from Resor to Barbour 1 (Dec. 12, 1995) (J.A. at 64) (emphasis added). Yet, in fact the advertisement does use almost the precise formulation suggested by Resor. Immediately to the left of the box containing the Challenge Statement, the ad states: "[U]nder our plan, the government *would* spend $289 billion on Medicare" (emphasis added). It thus provides the very indication of conditionality that Resor says was re-

quired to make the assertion true. And while Resor insisted at oral argument that this court is not permitted to look outside the (framed) box to determine the meaning of the Challenge Statement, District of Columbia law is to the contrary.[8] We therefore find no ambiguity with respect to Resor's claim, and conclude that the Challenge Statement's assertion that H.R. 2491 "increases total federal spending" is not rendered false by the fact that the President ultimately vetoed the bill.

## IV

For the foregoing reasons, we conclude that the RNC's Challenge Statement is not ambiguous with respect to the two claims at issue on this appeal, and that, as a matter of law, the Statement is not false with respect to either claim. Accordingly, the judgment of the district court is

*Affirmed.*

---

**8.** *See Dodek,* 537 A.2d at 1096 (noting that the "general rule is that contracts will be read as a whole, and every part will be interpreted with reference to the whole"); *Davis v. Davis,* 471 A.2d 1008, 1009 (D.C.1984) (indicating that "to find a writer's intent," a court should "construe[ ] the document as a whole"); *cf. United States v. Insurance Co. of N. Am.,* 83 F.3d 1507, 1511 (D.C.Cir.1996) (noting the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions" (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995))).

USA TODAY · TUESDAY, DECEMBER 12 1995 · 7A

## "Heard the one about Republicans 'cutting' Medicare?"

*[Check image: Cashier's Check, TOWSON MD, December 6, 19 95, REPUBLICAN NATIONAL COMMITTEE, $ *1,000,000.00*, "YOUR NAME HERE", PAY TO THE ORDER OF, SIGNET BANK, AUTHORIZED SIGNATURE]*

## The fact is Republicans are increasing Medicare spending by more than half. I'm Haley Barbour, and I'm so sure of that fact I'm willing to give you this check for a million dollars if you can prove me wrong."

### SOUNDS SIMPLE, RIGHT?

For months now you've seen the president on TV talking about "Republican Medicare cuts." Just one problem: There are no cuts. No reductions. Not even a penny.

### THE FACT IS REPUBLICANS ARE INCREASING MEDICARE SPENDING.

That's right: *Increasing*. Making larger. Adding to. Year after year. In 1995, the government will spend $178 billion on Medicare. By 2002, under our plan, the government would spend $289 billion on Medicare. That's a 62% increase. Even in Washington, it's hard to call that a cut.

Republican spending on Medicare (in billions)

1995 1996 1997 1998 1999 2000 2001 2002
Source: Congressional Budget Office

### HERE'S WHAT REPUBLICANS ARE COMMITTED TO:

Increasing Medicare spending while saving this vital program from bankruptcy. You can believe me: I'm Haley Barbour, the head of America's Republican Party, and I don't like giving away money for nothing

### MILLION DOLLAR MEDICARE CHALLENGE

### HERE'S WHY YOU HAVE NO CHANCE FOR THE MILLION DOLLARS.

The Republican National Committee will present a cashier's check for $1 million to the first American who can prove the following statement is false: "In November 1995, the U.S. House and Senate passed a balanced budget bill. It increases total federal spending on Medicare by more than 50% from 1995 to 2002, pursuant to Congressional Budget Office standards." Responses must be postmarked by December 20, 1995.

**I BELIEVE YOU, HALEY.**
☐ Let me know what I can do to help you get out the truth that Republicans are increasing Medicare spending.

**I DON'T BELIEVE YOU, HALEY.**
☐ Enclosed is my analysis of why you are wrong.

Name _____
Address _____
City, State, Zip _____ Phone _____

Mail to: Haley Barbour, Million Dollar Medicare Challenge, RNC, 310 First Street, SE, Washington, DC 20003

Paid for by the Republican National Committee