# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 14, 2007          Decided November 23, 2007

No. 06-5139

HENRY W. SEGAR, ET AL.,
APPELLEES

v.

MICHAEL MUKASEY,
ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 77cv00081)

*Laurie Weinstein*, Assistant U.S. Attorney, argued the cause for appellants. With her on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence* and *John Henault*, Assistant U.S. Attorneys.

*Rebecca J.K. Gelfond* argued the cause for appellees. With her on the brief were *David S. Cohen* and *Steven F. Cherry*.

Before: GARLAND and KAVANAUGH, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: In 1984, this circuit affirmed a finding by the district court that the Drug Enforcement Administration (DEA) had engaged in racially discriminatory employment practices, in violation of Title VII of the Civil Rights Act of 1964. To remedy those violations, the parties agreed on a set of stipulated procedures governing the promotion of DEA special agents to positions in the agency's Senior Executive Service (SES). The text of the stipulation requires each candidate for such a position to file an application, provides that an SES selection panel will rate the candidates and develop a list of those who are best qualified, and states that the DEA Administrator "will make his selection . . . from the list of candidates provided" or from current members of the SES.

In 2003, the Administrator promoted an agent who was not then a member of the SES, and who had neither filed an application nor been placed on the list of those best qualified for the position. The plaintiffs then sought a temporary restraining order barring the DEA from making promotions without complying with the stipulated procedures and, in particular, from promoting agents who were not on a best-qualified list. Notwithstanding the text of the stipulation, the district court found that a footnote to the document rendered it ambiguous. The court further found that there was no meeting of the parties' minds regarding the meaning of the footnote and that, as a consequence, the stipulation was unenforceable. On that premise, the district court entered an interim injunction, effective "until such time as the parties are able to agree on a binding consent decree or this dispute is otherwise resolved." The injunction bars the DEA from making any off-list promotion without thirty days' notice and approval by the court.

We conclude that the district court erred in its interpretation of the stipulation agreed upon by the parties. The document is not ambiguous, is not invalid, and means what the plaintiffs say

it means: the Administrator of the DEA may not promote to an SES position a non-SES agent who is not on the list of best-qualified candidates generated by the stipulated procedures. The Administrator does, however, retain the discretion to decide *which* candidate to select from that list (or, instead, to choose a current SES employee as a lateral transfer). Because the district court entered the interim injunction on the basis of an erroneous premise, we direct the court to vacate the injunction and remand for further proceedings consistent with this opinion.

I

In January 1977, African-American DEA agents filed a class action against the DEA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The complaint alleged that the agency had engaged in racially discriminatory practices in six areas of employment. In 1981, following a bifurcated trial on the issue of liability, the court found that the DEA had discriminated against African-American special agents with respect to salary, grade at entry, work assignments, supervisory evaluations, discipline, and promotions. *Segar v. Civiletti*, 508 F. Supp. 690, 712-15 (D.D.C. 1981). The court ordered the DEA to "cease such discrimination forthwith" and to "immediately commence validity studies in order to implement effective, non-discriminatory supervisory evaluation, discipline, and promotion systems." *Id.* at 715. It also ordered the parties to address "what action is necessary to remedy the discrimination in salary and grade at entry and further remedy the discrimination in promotion." *Id.*

Following its determination that the DEA had violated Title VII, the district court addressed the question of specific relief. *Segar v. Smith*, No. 77-0081, 1982 WL 214 (D.D.C. Feb. 17, 1982). Among other things, the court awarded backpay to class members and established various "promotion goals and

timetables" for African-American agents. *Id.* at *4-8. The court retained jurisdiction over the case until "such time as the Court concludes that the rights of plaintiffs have been accorded and satisfied by defendants." *Id.* at *10.

On appeal, this circuit affirmed the district court's "liability determination in its entirety." *Segar v. Smith*, 738 F.2d 1249, 1259 (D.C. Cir. 1984). With respect to the district court's remedial order, the circuit's opinion affirmed the use of a class-wide backpay remedy, but it vacated the district court's specific backpay formula as well as "the part of the . . . remedy that mandates promotion goals and timetables." *Id.* The case was remanded to the district court "for further consideration of appropriate remedies." *Id.* "On remand," this court said, "we encourage the District Court to consider other remedial options to ensure that black agents attain their rightful places at the upper levels of DEA." *Id.* at 1295.

Thereafter, the parties began negotiating a series of stipulations to resolve the remedial issues remaining before the district court. In March 2002, the parties submitted for the court's approval the stipulation that is the font of this appeal. That stipulation implemented a promotion process for selecting DEA criminal investigators for positions in the DEA's Senior Executive Service (SES).[1] The stipulation states:

---

[1]In 1988, Congress authorized the Attorney General to establish by regulation a "personnel system for senior personnel" within the FBI and DEA to be known as the "FBI-DEA Senior Executive Service." Act To Amend Title 5, United States Code, To Authorize the Establishment of the FBI and DEA Senior Executive Service, Pub. L. No. 100-325, § 1, 102 Stat. 579 (1988) (codified at 5 U.S.C. § 3151(a)). The Attorney General issued a rule "formally establishing an FBI-DEA SES" in 1992. 57 Fed. Reg. 31,314 (July 15, 1992) (codified at 28 C.F.R. § 0.157).

> The parties submit this Stipulation for the Court to order the implementation of a non-discriminatory selection process for selecting [DEA] Criminal Investigators for positions in the Senior Executive Service.... The attached SES Special Agent Selection Process developed by the DEA, once ordered by the Court, will enact a system developed and constructed to provide DEA with a valid, non-discriminatory mechanism for selecting DEA special agent executives and to provide agency selection officials with the highest quality candidates from which to choose.

Stipulation Implementing a Promotion Process for Selecting DEA Criminal Investigators for Positions in the Senior Executive Service at 1, *Segar v. Ashcroft*, No. 77-0081 (D.D.C. Mar. 12, 2002) [hereinafter Stipulation].

The attachment referenced in the Stipulation, consisting of an executive summary and seven single-spaced pages, describes an application and selection process for SES special agent positions. *See* Review of Applications from Staff for SES Special Agent Positions, *Segar v. Ashcroft*, No. 77-0081 (D.D.C. Mar. 12, 2002) [hereinafter Stipulated Procedures]. The text of the document establishes the following procedures: each candidate for promotion to the SES must submit his or her application to the candidate's SES-level supervisor; the supervisor must complete a recommendation and evaluation form for the candidate; the application must be reviewed by an "SES selection panel," which will develop and submit a list of "best qualified" candidates to the DEA's Deputy Administrator; the Deputy Administrator will review the list and may remove candidates based on professional responsibility or disciplinary considerations; and the DEA Administrator will then make his or her selection from the list of candidates provided by the Deputy Administrator, or by lateral transfer of a current SES

member.  *Id.* at 1-3.  The title of the document includes a footnote, which reads as follows:

> These procedures are meant to systematize the process of selecting individuals for Special Agent SES positions.  However, nothing in these procedures are meant to reduce the authority of the Administrator in selecting persons to fill DEA positions.

*Id.* at 1 n.1.

The Stipulation was signed by counsel for the parties and approved by the district court on March 12, 2002.  Stipulation at 2.  Thereafter, then-DEA Administrator Asa Hutchinson made a number of promotions to the SES, in each case selecting a candidate who had applied and been rated and ranked pursuant to the process described in the text of the Stipulated Procedures.  On August 28, 2003, however, Hutchinson's successor, Administrator Karen Tandy, promoted Special Agent Mary Cooper to the SES.  It is undisputed that Cooper was not then a member of the SES and "had not submitted an application or been rated and ranked and placed on the list sent to the Administrator."  *Segar v. Ashcroft*, 422 F. Supp. 2d 117, 125 (D.D.C. 2006).

On March 12, 2004, the plaintiffs filed a motion for a temporary restraining order to rescind Cooper's promotion and bar the DEA from promoting to the SES any special agent who had not applied for promotion through the Stipulated Procedures.[2]  The plaintiffs argued that the parties intended

---

[2]Because Administrator Tandy later replaced Special Agent Cooper with another agent selected in accordance with the Stipulated Procedures, the request for rescission is no longer at issue.  J.A. at 408.

those procedures to be the sole method of promotion to the SES. The footnote, plaintiffs said, was intended only to make clear that the Administrator retained the authority to select which specific agent to promote from among those on the best-qualified list produced by the procedures (as opposed to a requirement that the Administrator select the highest-ranked applicant) or, instead, to select an agent who was already a member of the SES as a lateral transfer. By contrast, the DEA argued that the footnote reserved to the Administrator the authority to select a non-SES agent -- like Special Agent Cooper -- who had neither applied for the position nor been rated pursuant to the Stipulated Procedures.

After a hearing, the district court found that the meaning of the footnote was ambiguous and that extrinsic evidence of the parties' subjective intent was necessary to resolve the issues presented by the plaintiffs' motion. 422 F. Supp. 2d at 125. The court then conducted a bench trial, at which the parties presented evidence regarding their understanding of the footnote and the circumstances surrounding the development and implementation of the Stipulated Procedures. *Id.* at 126. On the basis of that evidence, the court concluded "that there was no meeting of the minds with respect to the footnote and whether the Administrator could promote a Special Agent to the SES who had not applied for such a promotion." *Id.* at 157. Because "[w]ithout a meeting of the minds, there is no enforceable contract," *id.* at 154, the court declared the Stipulated Procedures "void," *id.* at 155.

In the district court's view, the consequence of this decision was to put the parties "back in the position they were in before the Stipulated Procedures were entered." *Id.* at 157. This meant that the "DEA must satisfy the Court that it has complied with [the District] Court's order of February 6, 1981, affirmed by the Court of [A]ppeals . . . , to 'implement effective, non-

discriminatory . . . promotion systems.'" *Id.* (quoting *Segar*, 508 F. Supp. at 715). "To that end," the court ruled -- sua sponte -- as follows:

> [U]ntil such time as the parties are able to agree on a binding consent decree or this dispute is otherwise resolved, the Court will require defendant DEA to inform the Court and plaintiffs thirty days prior to any SES promotion of its intent to promote to the SES anyone who has not applied and been rated and ranked, and placed on a list of qualified applicants provided to the Administrator. Furthermore, in order to ensure compliance with this Court's . . . order, and the mandate of the Circuit Court, DEA shall not make any such promotion without prior approval from the Court.

*Id.* The court announced that it would hold a status conference in two months to consider "craft[ing] a remedy to address DEA's past discrimination against black agents." *Id.* at 120.

The DEA now challenges the district court's order on two grounds. It contends both that the court erred in finding the Stipulated Procedures ambiguous and that the court abused its discretion in issuing an interim injunction barring the DEA from making an off-list promotion without thirty days' notice and prior court approval. We address the DEA's contentions in Parts II and III below. Although we agree with the agency that the Stipulated Procedures are not ambiguous, we draw the opposite conclusion about what they unambiguously require. In our view, the Stipulated Procedures plainly compel the DEA to follow those procedures in making promotions. Because the interim injunction thus rests on a misapprehension regarding the Stipulated Procedures' validity, we direct the district court to vacate the injunction. We therefore need not resolve the DEA's other challenge.

9

## II

We begin with the dispute over the meaning of the Stipulated Procedures.

### A

As the district court held and the parties agree, "[a] consent decree, such as the stipulation implementing DEA's SES promotion procedures, is essentially a contract." 422 F. Supp. 2d at 126; *see United States v. Microsoft Corp.*, 147 F.3d 935, 945 n.7 (D.C. Cir. 1998); *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1125 (D.C. Cir. 1983); *see also* Appellant's Br. 10; Appellees' Br. 36. Accordingly, "construction of a consent decree is essentially a matter of contract law." *Gorsuch*, 718 F.2d at 1125; *see United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001).[3]

As the district court also correctly held, to establish a contract, "there must be a 'meeting of the minds' with respect to the material terms." 422 F. Supp. 2d at 126; *see Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999); *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995). To determine whether there was such a meeting, however, a court may not look to extrinsic evidence of the parties' subjective intent unless the document itself is ambiguous. *Christacos v. Blackie's House of Beef, Inc.*, 583 A.2d 191, 194 (D.C. 1990); *see Republican Nat'l Comm. v. Taylor*, 299 F.3d 887, 891-92 (D.C. Cir. 2002); *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 497

---

[3]In analyzing the Stipulated Procedures, the district court applied District of Columbia contract law. 422 F. Supp. 2d at 150. We do so as well because neither party has objected to application of D.C. law, and because the principles of contract construction that we apply are unexceptional and are urged in the briefs of both parties.

(D.C. Cir. 1995). The "question whether a contract provision is ambiguous is a question of law, which this court reviews de novo." *Bennett*, 45 F.3d at 497; *see Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 357 (D.C. Cir. 2000); *LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1055 (D.C. Cir. 1992). And if we determine that a contract is not ambiguous, interpretation of its plain language is also a question of law subject to our de novo review. *LTV*, 969 F.2d at 1055; *see Republican Nat'l Comm.*, 299 F.3d at 892.

"Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract." *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). One such aid is particularly important here: it is a "cardinal principle of contract construction[] that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). Hence, in ascertaining the meaning of the Stipulated Procedures, we may not read the text or footnote in isolation but must consider each in the context of the other. *See Fort Sumter Tours*, 202 F.3d at 358; *BWX Elecs., Inc. v. Control Data Corp.*, 929 F.2d 707, 711 (D.C. Cir. 1991); *accord* Appellant's Br. 23 ("Ultimately, the Court must read 'the contract as a whole, interpreting all parts of the contract together,'" and "must 'give[] all provisions a reasonable, lawful, and/or effective meaning.'" (quoting *Kass v. William Norwitz Co.*, 509 F. Supp. 618, 624 (D.D.C. 1980))).

Finally, we note that a contract provision "is not ambiguous merely because the parties later disagree on its meaning." *Bennett*, 45 F.3d at 497. It is ambiguous only "if it is reasonably susceptible of different constructions." *Id.* We therefore proceed to consider the reasonableness of each party's construction of the Stipulated Procedures.

B

According to the plaintiffs, the text of the Stipulated Procedures establishes a process that DEA agents must follow in applying for an SES position, and that both the applicants' superiors and the final decisionmaker (the Administrator) must follow in selecting agents for such a position. The culmination of that process is the generation of a list of the agents who are best qualified for the position and the selection by the Administrator of an applicant from that list. In the plaintiffs' view, the role of the footnote is to make clear that the Administrator retains discretion to decide which candidate to select from that list (or, instead, to choose a current SES employee as a lateral transfer). The Administrator is not constrained, for example, by a requirement to select the highest-ranked applicant on the list.

The text of the document is completely in accord with the plaintiffs' position that, with the exception of lateral transfers, only those candidates who have risen through the levels of review in the Stipulated Procedures are eligible for promotion. The text states that a candidate "must apply for the SES Merit Promotion Process to be considered for an SES Special Agent position," and it specifies the content of that application. Stipulated Procedures at 2. Next, the "candidate's SES manager must complete a recommendation for promotion to the SES." *Id.* The "SES selection panel will [then] rate and rank candidates." *Id.* at 2-3. In doing so, the panel "will measure leadership qualifications against established criteria" set out in the Stipulated Procedures. *Id.* at 3. Thereafter, the "Panel will develop a best qualified list of candidates based on its evaluation of candidate qualifications." *Id.* The Deputy Administrator may then remove a candidate's name for professional responsibility or discipline considerations. *Id.* Finally, "[t]he Administrator will make his selection or non-selection *from the list of*

*candidates provided by the Deputy Administrator*." *Id.* (emphasis added). The only textual exception to the requirement that the Administrator choose from the list is that "vacant SES positions also may be filled by lateral transfers of current SES employees." *Id.* at 1.

The footnote to the text is also reasonably read as the plaintiffs suggest. The footnote's first sentence is plainly consistent with the plaintiffs' view: "These procedures are meant to systematize the process of selecting individuals for Special Agent SES positions." *Id.* at 1 n.1. The only dispute involves the second sentence, which states: "However, nothing in these procedures are meant to reduce the authority of the Administrator in selecting persons to fill DEA positions." *Id.* But it is not inconsistent with that language to read "the authority of the Administrator" there referenced as the Administrator's authority to select from among those on the best-qualified list -- an authority that is not "reduce[d]" by the plaintiffs' reading. Moreover, such a reading makes sense within the context of the document as a whole, the text of which states: "DEA's policy is to fill each SES position *by selecting among* those candidates who are judged to be the best qualified for the job." *Id.* at 1 (emphasis added). Indeed, the Stipulation that the parties submitted to the district court expressly advises that "[t]he attached SES Special Agent Selection Process" -- consisting of both the text and the footnote to which it is appended -- "will enact a system developed . . . to provide agency selection officials with the highest quality candidates *from which to choose*." Stipulation at 1 (emphasis added).

The DEA does not dispute the plaintiffs' interpretation of the text of the Stipulated Procedures, conceding that it establishes a process that the agency must follow. But while the DEA concedes that the agency must follow that process, it simultaneously contends that the process does not bind the

Administrator's decision in any way. Oral Arg. Recording at 13:52-14:00. Specifically, the DEA argues that the footnote reserves to the Administrator the authority to select a candidate who never submitted an application (and is not a current SES employee), whose application was never reviewed and rated by the candidate's superior or the SES selection panel, and whom the panel never put on the list of best-qualified candidates.[4] This is not a reasonable reading of the contract as a whole.

The DEA essentially construes the footnote as saying "never mind" to the seven single-spaced pages that establish a process for evaluating and selecting SES candidates. In the agency's construction, notwithstanding the text's declaration that "*[e]ach* interested employee *must apply* for the SES Merit Promotion Process *to be considered* for an SES Special Agent position," Stipulated Procedures at 2 (emphases added),[5] a candidate may still be considered even if he or she does not submit the required application. Similarly trumped are the text's express requirements that the candidate's supervisor "must" complete a promotion recommendation and that the SES selection panel "will" rate and rank candidates and develop a best-qualified list. *Id.* at 2-3. Most important, the DEA's

---

[4]At one point in the oral argument, the DEA suggested that it interprets the footnote's reservation of authority for off-list promotions as limited to "rare" cases. Oral Arg. Recording at 18:24-18:28. But as plaintiffs' counsel aptly responded, the text of the footnote does not impose any such limitation on the "authority" to which it refers. Nor did the DEA advance this interpretation in its briefs.

[5]*See also* Stipulated Procedures at 2 (stating that "*[o]nly* those employees who meet the above minimum qualifications . . . will be considered," and listing those qualifications as including the requirements that "[c]andidates must apply during open application periods" and that "[t]he candidate's SES manager must complete a recommendation for promotion" (emphasis added)).

interpretation effectively deletes from the document the textual promise that the Administrator "will" make his or her selection from that list. *Id.* at 3.

This "reading of the two [provisions] violates [the] cardinal principle of contract construction" noted above: "that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono*, 514 U.S. at 63. That principle bars us from attributing to the footnote a meaning that would require "us to read the [seven pages of text] out of the contract." *Fort Sumter Tours*, 202 F.3d at 358; *see BWX*, 929 F.2d at 711 (holding that the plaintiff's interpretation of a contractual provision failed because it "completely ignore[d]" and was "flatly inconsistent with the rest of" the document). Yet that is what the DEA asks us to do.[6]

The government's reading is also inconsistent with the stipulated purpose of the consent decree. *Cf.* Restatement (Second) of Contracts § 202(1) & cmt. c (1981) (stating that contractual language is interpreted in light of, inter alia, the principal purpose of the contract). The footnote itself states that "[t]hese procedures are meant to systemize the process of selecting individuals for Special Agent SES positions." Stipulated Procedures at 1 n.1. The text states that "[t]he

---

[6]The DEA argues that its reading is supported by the fact that the footnote is to the document's title, which the agency asserts is an indication that the footnote modifies the entire agreement. This argument does nothing, however, to mitigate the fact that the DEA's reading deprives the document's text of meaning. Moreover, the footnote's placement is perfectly consistent with the plaintiffs' interpretation: it indicates that, although the procedures that follow in the text are intended to generate the list of candidates for promotion, they do not limit the Administrator's discretion in selecting which of the listed candidates to promote.

essence of this approach is to evaluate a person's achievements in accordance with a standard set of criteria." *Id.* at i (executive summary). And the Stipulation to which the procedures are attached advises the court that they "will enact a system developed and constructed to provide DEA with a valid, non-discriminatory mechanism for selecting DEA special agent executives." Stipulation at 1. In short, as government counsel stated at oral argument, the purpose of the Stipulated Procedures is "to provide transparency to the process" of promotion to the SES, in order to foster confidence that such promotions are made on the basis of merit rather than race. Oral Arg. Recording at 16:01-16:04.

But a reading that permits the Administrator to ignore the written process and choose whomever the Administrator wishes does not "systematize the process" of selection. A reading under which a candidate need never formally apply, and need never have his or her qualifications reviewed by the selection panel, does not establish a transparent process by which a person's achievements are "evaluate[d] . . . in accordance with a standard set of criteria." Nor does such a reading implement a "non-discriminatory mechanism" -- or any mechanism at all -- for selecting DEA special agent executives.

The DEA contends that any ambiguity in the footnote should be construed against the plaintiffs because they were "consciously ignorant" of its meaning -- that is, they were aware that the footnote might be susceptible of more than one meaning yet chose not to seek clarification from the DEA. As plaintiffs' counsel correctly noted at oral argument, in this case that contention is in direct conflict with the rule that any ambiguity in a contractual provision must be construed against the drafter. *See Mastrobuono*, 514 U.S. at 62; *Hunter-Boykin v. George*

*Washington Univ.*, 132 F.3d 77, 82 n.6 (D.C. Cir. 1998).[7] Moreover, it misperceives the role of the doctrine of "conscious ignorance." That doctrine is not a rule for resolving contractual ambiguity. Rather, it provides a potential response to the defense of mistake, a defense that under some circumstances permits a party to avoid a valid contract -- unless the mistake at issue was the consequence of conscious ignorance. *See Harbor Ins. Co. v. Stokes*, 45 F.3d 499, 501-02 (D.C. Cir. 1995); Restatement (Second) of Contracts § 154(b) & cmt. c. If we were to construe the Stipulated Procedures as having the meaning the DEA proffers, and if the plaintiffs thereafter attempted to interpose the defense of mistake, the DEA might then argue that the plaintiffs' alleged conscious ignorance vitiated that defense. But since we have construed the contract in the plaintiffs' favor, they have no reason to interpose the defense of mistake, and thus the doctrine of conscious ignorance is irrelevant.[8]

Moreover, applying the DEA's version of "conscious ignorance" here would come close to assuming that the government had negotiated in bad faith. *Cf. Fort Sumter Tours*, 202 F.3d at 358 & n.9 (noting the government's duty of good

[7]It is undisputed that the DEA drafted both the text and the footnote of the Stipulated Procedures. *See* Stipulation at 1 ("The attached SES Special Agent Selection process [was] developed by the DEA . . . ."); *Segar*, 422 F. Supp. 2d at 127 n.4 ("DEA does not dispute that it alone drafted the language in the footnote, although, inexplicably, DEA cannot identify the person at DEA who actually supplied the language in the footnote.").

[8]In light of our resolution of this point, we need not consider whether the kind of "mistake" arguably at issue here -- a mistake regarding an opposing party's understanding of a contractual provision, rather than a mistake regarding facts external to the contract -- would come within the defense.

faith and fair dealing in contract matters). To do so, we would have to accept that the agency drafted a specific set of procedures creating transparency in the promotion process, and then inserted a vague footnote to vitiate those procedures. We will not lightly assume that the government intentionally negotiated with its employees in bad faith.

In sum, the plaintiffs' construction of the Stipulated Procedures "harmonize[s]" the text and the footnote, *Mastrobuono*, 514 U.S. at 63, gives effect to both, and is faithful to the document's stipulated purpose. By contrast, the DEA's construction is not one of which the document is "reasonably susceptible." *Bennett*, 45 F.3d at 497. Accordingly, there is no residual ambiguity and no warrant to consider extrinsic evidence of the parties' subjective intent. *See id.* We therefore find -- contrary to the district court -- that the document evidences a meeting of the parties' minds and hence is a valid contract. The plain meaning of that contract is that both candidates and the DEA must follow the stipulated application and rating procedures, and that the Administrator must then make his or her final choice from among those candidates who have advanced to the best-qualified list (or who are already members of the SES). The Administrator retains, however, the discretion to choose which candidate to promote from that list.

## III

As discussed in Part I, the district court entered an interim injunction that ordered the DEA not to "promote any special agent to the SES who has not applied, been rated and ranked, and placed on a list of qualified applicants provided to the Administrator, without 30 days' prior notice to this Court and without prior approval of this Court." 422 F. Supp. 2d at 157. The order directed that the injunction remain in effect "until

such time as the parties are able to agree on a binding consent decree or this dispute is otherwise resolved." *Id.*

The court thought the injunction necessary in light of its conclusion that, because "there was no meeting of the minds" with respect to the meaning of the Stipulated Procedures, there was no enforceable contract and hence no "binding, enforceable consent decree." *Id.* "As a result," the court said, "the parties are back in the position they were in before the Stipulated Procedures were entered, and DEA must satisfy the Court that it has complied with this Court's order . . . , affirmed by the Court of [A]ppeals in [*Segar*, 738 F.2d 1249], to 'implement effective, non-discriminatory . . . promotion systems.'" *Id.* (quoting *Segar*, 508 F. Supp. at 715). "To that end," the court entered the injunction "to ensure compliance" with its previous order. *Id.*

The DEA seeks vacation of the injunction for two reasons: (1) the injunction rests on the erroneous premise that the Stipulated Procedures are ambiguous, did not constitute a meeting of the minds, and are therefore void; and (2) even if the Stipulated Procedures are void, entry of the injunction was an abuse of discretion. As noted in Part II, we agree with the DEA that the Stipulated Procedures constitute an unambiguous and enforceable contract between the parties, albeit one with the meaning proffered by the plaintiffs. That being so, the court's injunction does indeed rest on an erroneous legal premise and must be vacated. *See National Wildlife Fed'n v. Burford*, 835 F.2d 305, 319 (D.C. Cir. 1987) ("We should overturn the district court's decision [to grant or deny a preliminary injunction] 'when it rests its analysis on an erroneous premise . . . .'" (quoting *White House Vigil for the ERA Comm. v. Watt*, 717

F.2d 568, 571 (D.C. Cir. 1983))); *Ambach v. Bell*, 686 F.2d 974, 988 (D.C. Cir. 1982) (same).[9]

Because the interim injunction must be vacated in any event, we need not consider whether issuing it might also have constituted an abuse of discretion on the procedural and substantive grounds urged by the DEA. We do, however, reject the DEA's suggestion that the injunction -- or the Stipulated Procedures, for that matter -- is invalid because limiting the Administrator's hiring discretion "in any way" is inconsistent with 5 U.S.C. § 3151. Appellant's Br. 12. That provision, the DEA insists, "essentially gives the Agency unfettered discretion" to "promote anyone to the SES." *Id.* 12-13.

_____

[9]Because we do no more than grant the relief (vacatur of the interim injunction) sought by the DEA -- although on different grounds -- a cross-appeal by the plaintiffs was not required. Further relief for the plaintiffs, including reinstatement of the Stipulated Procedures, must await the proceedings on remand, over which the district court has continuing jurisdiction. *See* Fed. R. Civ. P. 54(b) (providing that generally, "any order . . . which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . , and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims"); *Segar*, 1982 WL 214, at \*10 (retaining jurisdiction over the plaintiffs' lawsuit until "such time as the Court concludes that the rights of plaintiffs have been accorded and satisfied by defendants"). There is certainly no unfairness to the DEA in our considering the proper construction of the Stipulated Procedures: the agency's own briefs squarely raise the issue, and we cannot resolve it without stating the construction that we believe to be correct -- even if that is not the construction the DEA would have preferred. Indeed, government counsel agreed that, because appellate review of a contract's plain meaning is de novo, the court may address whether the plaintiffs' construction is plain. Oral Arg. Recording at 5:07-5:13.

Section 3151(b) states that, "[e]xcept as provided in subsection (a), the Attorney General may . . . appoint, promote, and assign individuals to positions established within the FBI-DEA Senior Executive Service without regard to the provisions of this title governing appointments and other personnel actions in the competitive service." 5 U.S.C. § 3151(b)(2). But that provision does not grant the Attorney General (or his designee, the Administrator) "unfettered discretion" over promotions. Section 3151(b) is expressly subject to section 3151(a), which requires that the FBI-DEA SES regulations "meet the requirements set forth in section 3131." *Id.* § 3151(a). Section 3131, in turn, directs that the SES "shall be administered so as to . . . ensure compliance with all applicable civil service laws[,] . . . including those related to equal employment opportunity." *Id.* § 3131(11). Moreover, just as "[w]e cannot find any indication in the Civil Service Reform Act that Congress intended to insulate the SES from Title VII remedies in the event of discrimination," including remedies that restrict management flexibility, *Lander v. Lujan*, 888 F.2d 153, 158 (D.C. Cir. 1989), we cannot find any such indication in section 3151(b). At most, section 3151(b) authorizes the Attorney General to act "without regard to [certain] provisions of *this* title" of the U.S. Code -- namely, Title 5. Title VII of the Civil Rights Act, however, resides in Title 42 of the Code.

Finally, we take note of the DEA's contention that it has ended racial discrimination in its employment practices and that the district court's jurisdiction over the selection of the agency's SES positions should therefore be terminated. There is, of course, considerable case law discussing the conditions under

which a district court may dissolve or modify a consent decree.[10] But the place to litigate that issue first is in the district court.

In fact, the DEA did raise the issue in the district court. On January 4, 2005, just prior to the conclusion of the trial regarding the meaning of the Stipulated Procedures, the DEA filed a motion to terminate the court's jurisdiction. *See* Motion To Terminate Jurisdiction Relating to SES Selections, *Segar v. Ashcroft*, No. 77-0081 (D.D.C. Jan. 4, 2005). The motion contended that "[i]t has been nearly 22 years since the Court entered the original remedial Orders in this case" and that the circumstances justifying the Stipulation no longer exist. *Id.* at 1. Although the district court ruled that it would be "inconsistent with the fair administration of justice to embark on discovery and briefing" on "the eve of the conclusion of a lengthy trial," the court "informed the parties that it would turn to the defendants' motion once the plaintiffs' motion was resolved." 422 F. Supp. 2d at 120 n.1. On remand, the court should turn to the DEA's motion as soon as possible.

IV

For the foregoing reasons, we direct the district court to vacate the interim injunction, and we remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

[10]*See Freeman v. Pitts*, 503 U.S. 467, 490-91 (1992); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 391 (1992); *Pigford v. Veneman*, 292 F.3d 918, 923 (D.C. Cir. 2002); *NLRB v. Harris Teeter Supermarkets*, 215 F.3d 32, 34-36 (D.C. Cir. 2000); *United States v. Western Elec. Co., Inc.*, 46 F.3d 1198, 1203 (D.C. Cir. 1995); *see also* Fed. R. Civ. P. 60(b)(5).