# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 10, 2008          Decided December 5, 2008

No. 07-7173

AMERICAN CENTER FOR INTERNATIONAL LABOR SOLIDARITY,
APPELLANT

v.

FEDERAL INSURANCE COMPANY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01523)

*Jeremiah A. Collins* argued the cause and filed the briefs for appellant. *Robert W. Alexander* entered an appearance.

*Wallace A. Christensen* argued the cause and filed the brief for appellee.

Before: GINSBURG, TATEL, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*:  After completing the obligatory administrative process and receiving a right-to-sue letter from the Equal Employment Opportunity Commission, an employee of appellant American Center for International Labor Solidarity (ACILS) sued it for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e. ACILS notified its employment insurer, appellee Federal Insurance Company, of the pending lawsuit.  Federal denied coverage, asserting that its insurance policy required ACILS to have informed Federal as soon as it knew charges had been filed with the Commission, rather than waiting until the start of litigation.  ACILS then settled with the employee, only to turn around and sue Federal for reimbursement.  Agreeing that notice at the time of suit came too late, the district court entered summary judgment for Federal.  Because we read the policy the same way, we affirm.

## I.

The policy defines a "claim," in relevant part, as a "formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document."  Def.'s Mot. Summ. J. Ex. A ("Policy") ¶ 22.  The parties agree that if Commission proceedings qualify as "claims" under this language, then timely notice was both required and lacking.  The parties also agree that Commission proceedings are "administrative" and "commenced by the filing of a notice of charges."  They have thus winnowed the issue on appeal to a narrow one: whether Commission proceedings are "formal," and therefore "claims," as the district court held.  Because it did so on summary judgment, and because it construed the language of a contract, our review is de novo.  *See, e.g.*, *Creekstone Farms Premium Beef, L.L.C. v. Dep't of Agric.*, 539 F.3d 492, 497 (D.C. Cir. 2008) (on summary judgment); *Segar v.*

*Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007) (on contract interpretation).

Lurking within this dispute is an interesting question regarding the proper application of a central canon of construction governing insurance contracts, namely that "[u]nless the language . . . is unambiguous, doubts are to be resolved in favor of the insured." *Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 954 (D.C. Cir. 2001) (citing District of Columbia law); *see also Pa. Indem. Fire Corp. v. Aldridge*, 117 F.2d 774, 775 (D.C. Cir. 1941) ("[T]he general rule applicable in the interpretation of an insurance policy is that, if its language is reasonably open to two constructions, the one most favorable to the insured will be adopted."). ACILS claims that as the "insured" in this case it enjoys the benefit of the canon. Federal acknowledges this canon but believes it is more nuanced—that resolution of doubts "in favor of the insured" requires construing the policy in favor of *insureds* generally, rather than merely in favor of the policyholder in a particular case. According to Federal, *it* should get the benefit of the canon because, in general, insureds would favor *its* argument that the policy covers Commission proceedings as claims. And indeed, Federal has consistently interpreted its policy in this way, honoring over 20,000 claims for coverage of Commission proceedings and denying none. David L. Keenan Decl. ¶ 3. ACILS counters that the policy should not be construed in favor of insureds generally in this way because it needn't be construed generally at all, i.e., the policy can be read in conflicting ways across cases so long as the reading in every case benefits the policyholder and makes the insurer liable for ambiguities that were entirely within its power to avoid. *See Richardson*, 270 F.3d at 954 ("The burden is on the insurer to spell out in terms understandable to the man in the street any provisions that would exclude coverage." (internal quotation marks omitted)).

Interesting as this issue is, we need not address it because the canon exists to resolve ambiguities and because, as we explain below, we see no ambiguity in whether a Commission investigation qualifies as a "formal administrative or regulatory proceeding," Policy ¶ 22. And so here, as always, we follow the definitive rule that where language is "clear and unambiguous, [it] will be enforced by the courts as written." *Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997) (internal quotation marks omitted); *see also Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127 (D.C. 2001) (where policy term excluding coverage "is not ambiguous, the courts must enforce [it] as written") (internal quotation marks omitted).

## II.

For the principal reason that their form is governed by extensive regulation, Commission proceedings are surely formal. Regulations dictate every facet of the Commission's work: the submission of information on alleged instances of discrimination, 29 C.F.R. § 1601.6; the form, content, and procedure for filing of charges, *id.* §§ 1601.7-.9, .11-.12; the service of charges on alleged discriminators, *id.* § 1601.14; the Commission's investigative authority, *id.* § 1601.15, subpoena power, *id.* § 1601.16, and power to compel witnesses for public hearings, *id.* § 1601.17; the procedure for Commission determinations of cause, settlement, and dismissal of proceedings, *id.* §§ 1601.18-.21; the Commission's power to initiate its own civil actions, *id.* § 1601.27; and the Commission's role in empowering individuals to sue, *id.* § 1601.28; *see also* 42 U.S.C. § 2000e-5(f)(1).

That Commission proceedings are regular and formalized in this way is hardly surprising given their statutorily prescribed role as a necessary predicate to filing a Title VII

suit. *Id*. Created by Congress as a kind of national triage center for discrimination claims, the Commission examines every charge, begins an investigation, gives an initial prognosis, attempts to resolve the issue quickly, and commits resources to the most pressing cases. That role, specified by statute and structured by regulation, can hardly be considered informal.

ACILS argues that because the Commission held no hearing and has no authority to adjudicate liability, its proceedings must be deemed informal. As to the first point, even granting ACILS's contention that the word "formal" here "refers to a particularly exacting and solemn kind of proceeding," Appellant's Reply Br. 8, we disagree that the investigation lacked the requisite formality simply because the Commission held no hearing. The Commission requested "a statement of [ACILS's] position with respect to the allegation(s) contained in th[e] charge," Def.'s Mot. Summ. J. Ex. F at 1, which ACILS obviously regarded as important, responding with a 16-page letter drafted by outside counsel. *See* Def.'s Mot. Summ. J. Ex. G. Moreover, this request was hardly the limit of what the Commission's investigation might have involved, as it may hold fact-finding conferences, 29 C.F.R. § 1601.15(c), subpoena documents, *id.* § 1601.16, and "demand in writing that a person appear . . . for the purpose of testifying under oath before the Commission or its representative," *id.* § 1601.17(a). Of course, formality is a question of what proceedings might involve rather than a question of what they ultimately end up involving; by the time the extent of the proceedings is known, any notice will come too late to actually provide notice at all. That these proceedings stand as a necessary prelude to any litigation adds solemnity as well.

Nor do we agree with ACILS that these proceedings lack consequence—and therefore formality—solely because the Commission has no authority to make a final determination of monetary liability.  To be sure, the Commission employs only "*informal* methods of conference, conciliation, and persuasion," in attempting to eliminate discriminatory practices, § 2000e-5(b) (emphasis added), but its investigation of such practices is not so limited.  Commission investigations are not only governed by the extensive regulations described above, but they can also have serious consequences for their targets.  In contrast to the period of informal mediation following an investigation, where "[n]othing said or done . . . may be made public by the Commission," *id.*, records from the investigation, any determination of cause to believe that discrimination occurred, and position statements submitted by the charged party may all be admissible as relevant evidence in subsequent litigation.  And if the investigation goes poorly for the employer, it may find itself litigating against the superior resources of the Commission or even the Justice Department.  § 2000e-5(f)(1).  Moreover, if the case remains unresolved at this opening stage, and notice can be withheld until a complaint is filed, the insurer's only chance for pre-litigation settlement will have fallen by the wayside.  Such consequences convince us that Commission proceedings must be regarded as "formal" regardless of the Commission's ability to adjudicate monetary liability.

That a contrary construction of "claim" would fail to properly construe the policy as a whole only reinforces our reading.  *See, e.g.*, *Republican Nat'l Comm. v. Taylor*, 299 F.3d 887, 894 n.8 (D.C. Cir. 2002) (citing District of Columbia law on contract interpretation).  Federal has a right under the policy to "defend any claim" in the manner of its choosing, Policy ¶ 8, and the insured must do "nothing that may prejudice [Federal's] position or its potential or actual

rights of recovery," *id*. Given the important consequences discussed above, it is clearly during Commission proceedings that an insured could begin damaging Federal's right of defense. Were we to read the policy as excluding these early but consequential stages of the Title VII process from the "claims" that Federal has a right to defend, it would afford Federal little protection from prejudice in the ensuing lawsuits that it is certainly obligated to cover.

Like the district court, we are unconvinced by cases that occasionally describe the Commission's work as informal. *See Am. Ctr. for Int'l Labor Solidarity v. Fed. Ins. Co.*, 518 F. Supp. 2d 163, 170-71 (D.D.C. 2007) (collecting cases). In general these statements represent only passing dicta, and none amounts to an opinion on the word "formal" as used in Federal's policy. Judge Pollak's considered opinion in *Bensalem Township v. Western World Insurance Co.*, 609 F. Supp. 1343, 1347-49 (E.D. Pa. 1985), likewise has nothing to do with the issue before us: though he excluded Commission proceedings from coverage as "claims" under a different insurance policy, *id.* at 1349, that policy failed to define the term "claim" at all, *id.* at 1347-48.

Proceedings whose forms are so carefully structured by statute and regulation to effect a particularly important purpose in the process of Title VII litigation are "formal." We affirm.

*So ordered.*